**The STATE of Texas**

v.

**Leo STEELMAN and Ian Steelman, Appellees.**

Nos. 1022–00, 1023–00.

Court of Criminal Appeals of Texas, En banc.

Oct. 23, 2002.

Stan Brown, Abilene, for Appellant.

Kollin Shadle, Asst. DA, Abilene, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, and COCHRAN, JJ., joined.

Texas Code of Criminal Procedure article 14.01(b) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." The issue presented in this case is whether the odor of burnt marijuana emanating from a residence, coupled with an anonymous tip that drug dealing was taking place at that residence, gave police officers probable cause to believe that the person who opened the door

of the residence had committed an offense in the officers' presence and thus permitted the officers to enter and arrest everyone inside the home.

## I

On April 21, 1998, the Abilene Police Department received an anonymous tip that drug dealing was taking place at the residence of Ian and Leo Steelman, appellees.[1] In response, the department dispatched three officers to the scene. Upon arrival, the officers proceeded to the front door of the residence. Before they got to the front door, however, the officers peered into the house through a crack in one of the window blinds. They observed no illegal activity. They merely saw four men sitting in a living room.[2] The officers then proceeded to knock on the front door.

Ian opened the door, stepped outside, and closed the door behind him. When Ian opened the door, the officers smelled the odor of burnt marijuana. The officers asked Ian for identification. Ian informed the officers that he would have to retrieve his identification from inside the house. He then opened the door, walked back through it, and attempted to close it behind him. At that point, one of the officers placed his foot in the doorway and prevented Ian from closing the door. The officers then burst through the doorway, handcuffed all of the occupants, including Leo, and placed them all under arrest.

At that point, the officers contacted narcotics agent David Varner. Varner arrived at the scene and smelled marijuana inside the residence. After asking for, but not receiving, appellees' consent to search the residence, Varner left to obtain a search warrant. In his search warrant affidavit, Varner asserted that probable cause existed to believe that the occupants of the residence were in possession of marijuana. Approximately two hours after the officers initially entered the residence, Varner obtained a search warrant, searched the residence, and found marijuana.

On July 16, 1998, a Taylor County grand jury indicted appellees for misdemeanor possession of marijuana. *See* Tex. Health & Safety Code § 481.121(b). Appellees filed a motion to suppress the marijuana. In their motion, appellees argued that both the warrantless arrests and the search of the residence pursuant to the warrant were illegal under the Texas Constitution and state statutory law, namely Texas Code of Criminal Procedure article 14.01(b). They further argued that because the initial arrest of Ian and the subsequent arrest of Leo were illegal, any evidence acquired thereafter was tainted by that illegality and, therefore, should be suppressed under Texas Code of Criminal Procedure article 38.23. *See Irvin v. State,* 563 S.W.2d 920, 924 (Tex.Crim.App. 1978) (Article 38.23 mandates the suppression of the fruits of an illegal arrest).

■ At the suppression hearing, the State argued that once a police officer smells burning marijuana and determines which house it is coming from, the officer has probable cause to arrest the occupants and search that house.[3] The trial court

---

1. Leo Steelman is the father of Ian Steelman. Unless otherwise noted, we will henceforth refer to the Steelmans by their first names.

2. Moreover, the trial court found that, even after the officers entered the residence, "[n]one of the officers observed any marijuana or other contraband inside the residence."

It was not until they secured a search warrant, some two hours later, that they found marijuana.

3. The burden was on the State to show that the arrest was within an exception to the warrant requirement. *Bell v. State,* 724 S.W.2d 780, 786 (Tex.Crim.App.1986).

attempted to clarify the State's position, and the following exchange took place:

COURT: You're proceeding under [the] search warrant here, aren't you?

PROSECUTOR: No, sir, this is a warrantless search.

The State then continued its argument:

So, your honor, the—I guess to summarize our position, these officers went there on a tip, went there where you or I could go, where anybody could go, knock on the door, smelled marijuana coming from the residence, *that gives them probable cause to believe that marijuana is present and the cases say that they can then search for that marijuana.*

They go inside the residence, secure the residence, make the arrest, ask for consent, do not get it, then make application for a search warrant. The affidavit speaks for itself. The officer, again, presents his probable cause to believe that the marijuana was there. He says he smelled it and I forgot how many other officers he put in his affidavit say that they smelled it there and the Justice of the Peace finds probable cause, signs the warrant and the warrant is executed and the evidence is seized.

That's our basis for the search that was conducted, Your Honor.

At that point, the trial court attempted again to clarify the State's position:

COURT: As I understand the State's argument is they say the facts of this case would justify the search without a warrant, is that correct?

PROSECUTOR: Well, your honor, that and I present the warrantless cases to get the officers in the house in the first

place. I mean, I believe that that is sort of a seizure of the house.

COURT: Do you think [based on] the facts of this case they had to get a search warrant?

PROSECUTOR: Your Honor, I haven't thought about it in that light, I'll be honest with the Court. I'm going on the basis that they went inside the residence based upon the probable cause of smelling the marijuana. And I'll be honest, I haven't thought about it in the light that you are.

COURT: That's the way I understand your argument that they didn't even need a search warrant once they're there and smelled the marijuana.

Thus, it is clear that, even though appellees' argued that both the warrantless arrests and the search pursuant to the warrant were illegal, the State contended that the evidence should not be suppressed solely because the *warrantless* arrest and *warrantless* search were legal. The State, for whatever reason, choose not to rely upon the search warrant.

At the conclusion of the suppression hearing, the trial court granted appellees' motion to suppress. The trial court concluded that because the officers did not have probable cause to believe that either Ian or Leo had committed an offense in their presence, the warrantless arrests of Ian and Leo were illegal, and therefore, any evidence seized during the subsequent search of the residence was tainted and should be suppressed.[4] The State appealed the trial court's ruling.

On appeal, the State made two distinct arguments. The State argued first that "the odor of burning marijuana that es-

---

4. The trial court made the following conclusions of law: (1) "An officer may not arrest a person without a warrant unless he observes such person is committing an offense," and

(2) "Once an officer arrests a person without a warrant or without observing an offense, any evidence obtained should be suppressed."

caped from the residence when [Ian first opened the door] provided probable cause [to believe] that the offense of possession of marijuana was being committed in the officers' presence." The State argued second, for the first time, that "even if the warrantless arrest was improper ... the search under the search warrant was proper because neither the probable cause to search, nor the marijuana evidence was the 'fruit' or product of the arrest." The Eleventh Court of Appeals disagreed with the State and upheld the trial court's ruling suppressing the marijuana. *State v. Steelman*, 16 S.W.3d 483 (Tex.App.Eastland 2000). The court of appeals reasoned (1) that the warrantless arrests of appellees were illegal because the officers did not have probable cause to believe that the appellees had committed an offense in their presence and (2) that "the issuance of the search warrant did not attenuate the taint from the [initial] illegal search and arrest." We granted the State's petition for discretionary review to determine whether the court of appeals erred. *See* Tex.R.App. Proc. 66.3(b).

■ In its brief to this Court, the State argues that the warrantless arrests of appellees, and the subsequent search of their residence, were reasonable under both the State and Federal Constitutions and valid under one of the warrant exceptions in the Texas Code of Criminal Procedure. However, appellees, in their motion

to suppress, did not make a federal constitutional argument concerning the warrantless arrests. Instead, appellees made a state statutory argument and a state constitutional argument.[5] They argued that the arrests were illegal, and any fruits of the arrest were tainted, because (1) the arrests were "without a valid warrant and without probable cause,"[6] and (2) the arrests were unreasonable under Article I, section 9 of the Texas Constitution. The trial court elected to grant the motion to suppress based upon Article 14.01(b). The trial court expressly concluded that "[a]n officer may not arrest a person without a warrant unless he observes such person is committing an offense." On appeal, the State argued that the arrests were legal under Article 14.01(b). Neither the State nor appellees, in their briefs to the court of appeals, made any mention of Article I, section 9. At that point, the parties abandoned the state constitutional argument. Therefore, as to the legality of the warrantless arrests and search, only the state statutory argument is properly before us.

■ In its brief to this Court, the State also argues that "even if the entry and arrest are deemed illegal, the 'taint' of the entry and arrest does not reach backward to the lawfully-obtained probable cause on which the search warrant is based." Indeed, we have recognized that even if an illegal warrantless arrest taints subse-

---

**5.** Under state law, there are two primary ways to attack a warrantless arrest. An accused may make a constitutional argument under Article I, section 9 of the Texas Constitution or he may make a statutory argument under Texas Code of Criminal Procedure articles 14.01–14.05. If the accused makes a state constitutional argument, then the proper inquiry is "the reasonableness of the search or seizure under the totality of the circumstances." *Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998). If the accused makes a statutory argument, the proper inquiry is (1) whether there was probable cause with re-

spect to that individual and (2) whether the arrest fell within one of the statutory exceptions. *Beverly v. State*, 792 S.W.2d 103, 104–105 (Tex.Crim.App.1990); *Lunde v. State*, 736 S.W.2d 665, 666 (Tex.Crim.App.1987) (plurality opinion).

**6.** Although appellees did not actually cite Texas Code of Criminal Procedure articles 14.01–14.05 in their motion, the language used in their motion to suppress plainly implied a statutory argument.

quently acquired evidence, such evidence need not be suppressed if the State can show that the taint has been attenuated (e.g. by an otherwise valid search warrant). *See Bell v. State,* 724 S.W.2d 780 (Tex.Crim.App.1986). However, as previously noted, the State did not present this argument to the trial court. At the suppression hearing, the State specifically limited its argument to one theory of law: that there was probable cause to justify a *warrantless* arrest and *warrantless* search. Because the State did not present its other theory (that even if the warrantless arrest was illegal, it did not taint the search pursuant to the warrant) to the trial court, the State cannot rely on that theory on appeal. *State v. Mercado,* 972 S.W.2d 75,78 (Tex.Crim.App.1998).

In sum, the only issue before us today is whether, under the applicable provisions of the Texas Code of Criminal Procedure, the officers had probable cause to (1) make a warrantless arrest of appellees and (2) to conduct a warrantless search of the Steelman residence.

### III

■ In considering a trial court's ruling on a motion to suppress, an appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543–544 (Tex.Crim.App.1990).

■ In this case, the arrest of Ian took place *after* the officers burst into his residence. But, under state law, an officer may not enter a residence to make a warrantless arrest unless "the arrest may be *lawfully made without warrant*" and the person consents or there are exigent circumstances. Tex.Code Crim. Proc. art.

14.05 (emphasis added). Before we can consider whether the officers had authority to enter the residence under Article 14.05, we must first determine whether the initial arrest of Ian could be lawfully made without a warrant.[7]

■ A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the statutory exceptions. *Beverly v. State,* 792 S.W.2d 103, 104–105 (Tex. Crim.App.1990); *Lunde v. State,* 736 S.W.2d 665, 666 (Tex.Crim.App.1987) (plurality opinion). One of those exceptions, Article 14.01(b), provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." In *Beverly,* this Court explained that:

> "The test for probable cause for a warrantless arrest under [article 14.01(b)] is whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." 792 S.W.2d at 105. (Some punctuation omitted.)

An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence. *Clark v. State,* 117 Tex.Crim. 153, 35 S.W.2d 420, 422 (1931). However, the information afforded to the officer by his senses must give the officer reason to believe that *a particular suspect* committed the offense. *Muniz v. State,* 851 S.W.2d 238, 251 (Tex. Crim.App.1993).

---

7. Both the trial court and the court of appeals concluded that the arrest was not lawfully made without a warrant because the arresting officers did not have probable cause to believe that Ian had committed an offense in their presence.

Consider again the facts and circumstances before the officers that night. There is an unsubstantiated, anonymous tip that someone at the Steelman residence is dealing drugs. The officers walk up to the house, peer into the house through a small crack in the window blind, and, by their own admission, observe no criminal activity. They then knock on the door. Ian steps out and closes his door. They smell the odor of marijuana in the air but not on Ian himself.[8] Given those circumstances, what did the officers have probable cause to believe? Certainly they had probable cause to believe that someone, somewhere, was or had been smoking marijuana. But, did the mere smell of marijuana in the air give the officers probable cause to believe that Ian possessed marijuana? No. This Court has recognized that "odors alone do not authorize a search without a warrant." *Moulden v. State*, 576 S.W.2d 817, 819 (Tex.Crim.App.1978), quoting *Johnson v. U.S.*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948).[9] Why, then, did the officers burst into the house? What offense, if any, did they observe Ian committing? The State argues that given the anonymous tip and the odor of burned marijuana, the officers had probable cause to believe an offense, possession of marijuana,[10] had been committed in their presence. We disagree.

First of all, a mere anonymous tip, standing alone, does not constitute probable cause. *Ebarb v. State*, 598 S.W.2d 842, 845 (Tex.Crim.App.1980) (on motion for rehearing); *see also Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App.1984). In this case, the tip, that someone at the residence was dealing drugs, did not amount to anything. The tip was never substantiated, and none of the occupants were ever charged with drug dealing. *See* Tex. Health & Safety Code § 481.120.

Second, the mere odor of burning marijuana did not give the officers probable cause to believe that Ian had committed the offense of possession of marijuana in their presence. The odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home. See Johnson, 333 U.S. at 13, 68 S.Ct. 367. An arresting officer must have specific knowledge to believe that the person to be arrested has committed the offense. *Muniz*, 851 S.W.2d at 251. Professor LaFave explains:

"[T]he detection of the odor of marijuana in a certain *place* will not inevitably provide probable cause to arrest a *person* who is at that place. Illustrative is *People v. Harshbarger*, 24 Ill.App.3d 335, [321 N.E.2d 138, 140–141 (1974)], where police, upon detecting the strong smell of burning marijuana in a house, arrested all four of the men found therein, resulting in the discovery of amphetamines on the person of a guest. The court could 'find no justification for defendant's arrest at the time it was made, nor for the search of his person occurring sometime subsequent thereto at the stationhouse. The officers had never seen or heard of defendant before. He

---

8. At the suppression hearing, Officer Vines was asked if the odor of marijuana could have come from Steelman's clothes. He replied, "No, sir, it was a strong smell [that seemed to come from the inside of the residence]."

9. *Johnson* speaks in terms of warrantless searches. Here, we are discussing a warrantless arrest. However, the actual arrest of Steelman took place after the warrantless entry into the residence, which can be thought of as a warrantless search for the person to be arrested. *See* G. Dix & R. Dawson, 40 *Texas Criminal Practice and Procedure* § 9.11 (2d ed.2001).

10. *See* Tex. Health & Safety Code § 481.121(b)(3).

was merely one of four persons sitting in the living room of a house in which the officers thought they smelled burning marijuana. They had no idea which one of them, or for that matter, if any of them had actually been smoking marijuana. Nor did defendant by his actions, furtive or otherwise, give any indication that he may have been violating the law. In effect, defendant's arrest was prompted by a mere suspicion that someone must have been smoking marijuana because of the odor believed to be present, and therefore, the best thing to do was arrest and search everybody.'" W. LaFave, *Search and Seizure* § 3.6(b) (1996 & Supp.2002).

Similar to the situation described above, the officers in this case had no idea who was smoking or possessing marijuana, and they certainly had no particular reason to believe that Ian was smoking or possessing marijuana.

Given the evidence before it, the trial court in the instant case could have reasonably concluded that the arrest of Ian was not lawfully made without a warrant because the arresting officers did not have probable cause to believe that Ian had committed an offense in their presence. Since the officers had no authority to make a warrantless arrest under article 14.01(b), they had no authority (under article 14.05) to enter the residence without a warrant and conduct a search, and any evidence seized as a result of those illegalities was tainted and subject to suppression. Therefore, the Court of Appeals did not err in upholding the trial court's decision to grant the appellees' motion to suppress.

We affirm the judgment of the Court of Appeals.

JOHNSON, J., filed a concurring opinion.

COCHRAN, J., filed a concurring opinion, in which MEYERS, J., joined.

WOMACK, J., concurred in the result.

KELLER, P.J., filed a dissenting opinion, in which HERVEY, J., joined.

KEASLER, J., filed a dissenting opinion, in which HERVEY, J., joined.

HERVEY, J., filed a dissenting opinion.

JOHNSON, J., filed a concurring opinion.

The United States Supreme Court has recently unanimously reaffirmed the principle that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana,* 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) Quoting Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), Kirk reiterated that "because 'the Fourth Amendment has drawn a firm line at the entrance to the house ... [, a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" Id. (Internal deletion in original.) Tex.Code Crim. Proc., Art. 14.05 provides that "an officer making an arrest without a warrant may not enter a residence to make the arrest unless: 1) a person who resides in the residence consents to the entry; or 2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant." (Emphasis added.)

In this case, neither appellee nor any other resident consented to the officers' entry into the residence. By clear United States constitutional and Texas statutory authority, the warrantless entry into the residence was illegal unless there was probable cause plus exigent circumstances. As the majority concludes, the trial court could have reasonably concluded that the

arresting officers did not have probable cause to believe that appellees had committed an offense in their presence. The probable-cause determination made by the trial court was fact-intensive and dependent upon witness credibility and demeanor, and the trial court was certainly in the best position to evaluate those facts and make the determination.

As Judge Cochran points out, the sky will not fall as a result of this Court's decision in the instant case. Our opinion today simply reinforces what most police officers in Texas assuredly already know—that they need a warrant, consent, or probable cause plus exigent circumstances to lawfully enter a person's home to make an arrest.

I join the majority opinion of the Court.

COCHRAN, J., filed a concurring opinion, joined by MEYERS and JOHNSON, J.J.

I join the majority opinion. I write separately only to point out what this case is *not* about.

This case is not about police officers who hear a gunshot inside a home and rush to investigate. That scenario clearly invokes the emergency doctrine and permits officers to enter a private home for the purpose of seeing if someone needs immediate assistance.[1]

I concur fully with the dissents' review of the standards for probable cause for searches in public places. I do not agree that this standard is appropriate in the present situation. This case is *not* about whether the odor of burning marijuana gives police officers the right to temporarily detain someone to investigate whether that person possesses marijuana.[2] Numerous Texas cases have addressed that issue.[3] As the court of appeals explicitly stated, that situation is clearly distinguished from the present one.

I would agree with the dissents that these officers had sufficient probable cause to temporarily detain Ian Steelman, *outside his home*, to determine whether he actually possessed marijuana in the officers' presence as they stood outside the home. But the officers did not do that.

This case is about the right of citizens to be left alone in the privacy of their homes.[4]

1. *Brimage v. State*, 918 S.W.2d 466, 500–501 (Tex.Crim.App.1996)(opinion on reh'g); *see also Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

2. The court of appeals quoted and distinguished *Levine v. State*, 794 S.W.2d 451, 453 (Tex.App.-Amarillo 1990, no pet.):

   Indeed, probable cause to search a validly stopped vehicle without a warrant exists when the searching officer, experienced in detecting the odor of marijuana, smells burnt marijuana emanating either from the vehicle itself, or from the person of the driver who has emerged from the vehicle, or from both.

   (Citations omitted). As the court of appeals correctly noted, that case did not apply to the present situation because these officers did not search a car. 16 S.W.3d at 488–89. Apparently, the dissents would define homes simply as stationary cars for purposes of search and seizure law.

3. The court of appeals in this case duly noted some of our cases on that issue in its opinion, 16 S.W.3d at 488. *See Meeks v. State*, 692 S.W.2d 504 (Tex.Crim.App.1985); *Miller v. State*, 608 S.W.2d 684 (Tex.Crim.App.1980); *Luera v. State*, 561 S.W.2d 497 (Tex.Crim.App. 1978); *Duff v. State*, 546 S.W.2d 283 (Tex. Crim.App.1977); *Leonard v. State*, 496 S.W.2d 576 (Tex.Crim.App.1973).

4. As the court of appeals put it: "A private dwelling, on the other hand, is a sacrosanct place in search and seizure law." 16 S.W.3d at 488. As Justice Scalia recently stated for the United States Supreme Court: " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable

As the court of appeals stated, both the United States Constitution and Texas statutory law require police officers to obtain a warrant before arresting a person inside his home absent a few, clear exceptions.[5] This is a case about officers who rushed into a person's home and arrested all of the occupants based solely upon an anonymous tip and the smell of burnt marijuana emanating from an open door. This is also a case in which a trial judge exercised his discretion and prerogative to disbelieve certain testimony.[6]

The trial court in this case made explicit findings of fact which included findings that some of the testimony by the police was "incredible" and noting that the credible officers saw no marijuana, other contraband, or paraphernalia—not even an ash tray—in plain view once inside the house.[7] Premised upon his factual findings, the trial court's two conclusions of law, as they applied to the present factual scenario, were:

1) "An officer may not arrest a person without a warrant unless he observes such person committing an offense"; and

2) "Once an officer arrests a person without a warrant or without observing an offense, any evidence obtained should be suppressed."

In its opinion, the court of appeals noted that "[t]he State argues that the trial court abused its discretion by concluding that the police officers made an unlawful arrest. The State contends that the odor of burnt marijuana gave rise simultaneously to probable cause to arrest and to search for the marijuana."[8] The court of appeals noted that all of the cases the State relied

---

governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). *That* is what this case is about: Ian Steelman's right to close the door and retreat into his own home. The legal issue in this case is: did the trial court and court of appeals both err, as a matter of law, in ruling that these officers made an "unreasonable governmental intrusion" into that home on that day under those circumstances?

5. *See* 16 S.W.3d at 487–88.

6. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000) ("[i]n a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record").

7. The court of appeals stated: "[t]he findings of facts entered by the trial court indicate that the trial court found [one officer's] testimony to be incredible." 16 S.W.3d at 487. For example, this officer testified that he saw

smoke coming out of the open door and that he saw a marijuana cigarette in an ash tray on the coffee table. The trial court did not believe this testimony. The trial court's findings were that there was *no* smoke coming out of the front door and that there was *no* marijuana in plain view anywhere. It is not irrational for a judge to be skeptical of testimony concerning the smell of marijuana when there is no discernible source of that smell.

The testimony in this case is remarkably similar to that in another recent case from the same jurisdiction, *Radford v. State*, 56 S.W.3d 346 (Tex.App.-Eastland 2001, no pet.). In that case, as in the present one, police officers received an anonymous tip. In *Radford*, the tip was of "people shooting up narcotics" at a certain home. When they arrived at that house and the defendant opened the door, the police officers smelled the odor of burning marijuana. They entered but they did not find any marijuana, ash trays, residue, or any other contraband in sight. There, as here, the officers arrested everyone, obtained a search warrant and, upon a full search found, not a bit of marijuana, but rather methamphetamine.

8. 16 S.W.3d at 487.

upon involved the search of automobiles, and correctly concluded that "[t]he police are given greater discretion to perform warrantless searches of automobiles because of their mobile nature."[9] That is correct, but this case has nothing to do with a vehicle search.

The court of appeals noted that Officer Vines testified that "smelling like burnt marijuana is not itself a crime."[10] The issue before the trial judge, before the court of appeals, and before this Court is: What crime did Ian Steelman commit in the officers' presence that gave them the right to barge into his home, arrest him and three other men, and hold them for several hours while another officer obtained a search warrant? The trial judge, the court of appeals, and now this Court have all found that Ian Steelman had committed no crime in the officers' presence. Therefore, the officers could not enter his home uninvited.[11] Nor could they arrest him and his three friends in the living room.

In deciding this case, the court of appeals aptly quoted Justice Robert Jackson writing in *Johnson v. United States*.[12] There, as here, police officers received an anonymous tip of drug use. In *Johnson* the officers went to a hotel room. Here they went to a private home. There, as here, the investigating officers smelled the "distinctive and unmistakable" odor of burning contraband. There, opium, here marijuana. There, as here, the police knocked, then entered without permission. There they searched, here they arrested

four people and waited hours for a search warrant. Justice Jackson stated:

> At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. . . . If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. . . .
>
> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a police-

---

9. *Id.* at 488.

10. *Id.* at 487.

11. Even if the officers had detained Ian Steelman to investigate the smell of burnt marijuana as he stepped outside his home, they still would not have had the right to enter his residence to make a "protective sweep" or

any other nonconsensual search if they had, in fact, discovered marijuana in Mr. Steelman's possession as he stood outside. *See Reasor v. State*, 12 S.W.3d 813, 816–17 (Tex. Crim.App.2000).

12. 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

man or government enforcement agent.[13]

The words of Justice Jackson are as valid today as they were fifty years ago. The sky did not fall as a result of his opinion in *Johnson*. It will not fall as a result of the opinion in this case.

Therefore, I join in the opinion and the judgment of the majority.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

The Court relies on opinions that are not on point,[1] opinions that are one hundred and eighty degrees *contrary* to the Court's proposition,[2] and one old, discredited, intermediate court, out-of-state case,[3] in support of its conclusion that the police did not have probable cause to arrest the appellees. The Court also confuses the issue here (probable cause) by including in its discussion the fact that the arrests took place in a residence. The result is that Texas now, as it so often used to do, removes itself from the mainstream of legal thought in America, and establishes as a matter of law that people may not be arrested for smoking marijuana in their homes—as long as they don't do it alone.

And, unfortunately, that is not all that this opinion achieves. The Court holds that the smell of burning marijuana does not provide probable cause for an arrest. But, while other factors may bear on an officer's ability to arrest or search, probable cause is probable cause—whether it be for an arrest, a search, an arrest warrant, or a search warrant. So, after today, not only are the police forbidden to arrest without a warrant in these circumstances, they are also forbidden to search, and a magistrate may not issue an arrest warrant or a search warrant on the basis of these facts. And neither may an officer search a car if he smells marijuana smoke emanating from it, as long as the driver is not alone, because "the mere smell of marijuana in the air" does not give officers probable cause to believe that an offense, possession of marijuana, has been committed in their presence or that any particular one of the people present possesses marijuana.[4]

Judge Cochran joins the Court's opinion but seeks to limit its reach by ignoring what the opinion actually says and by claiming that officers would have had probable cause to temporarily restrain Ian Steelman outside his home to determine whether he actually possessed marijuana. This construction of the Court's opinion is belied by the above statements and by the Court's further comment regarding the lack of probable cause: "[T]he officers in this case had no idea who was smoking or possessing marijuana, and they certainly had no particular reason to believe that Ian was smoking or possessing marijua-

---

**13.** 333 U.S. at 13–14, 68 S.Ct. 367.

**1.** *Muniz v. State*, 851 S.W.2d 238 (Tex.Crim. App.1993).

**2.** *Moulden v. State*, 576 S.W.2d 817 (Tex. Crim.App.1978); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947).

**3.** *People v. Harshbarger*, 24 Ill.App.3d 335, 321 N.E.2d 138 (1974). *Harshbarger*, an opinion from an intermediate court, has not been the law since 1985 (if it ever really was the law). In *People v. Stout*, 106 Ill.2d 77, 87 Ill.Dec. 521, 477 N.E.2d 498 (1985), the Illinois Supreme Court held that the odor of burning cannabis, detected by officers trained to recognize the smell, gave them probable cause to search. Although *Stout* concerned an automobile search, that fact did not affect the probable cause analysis, but only the issue of whether a warrant was required.

**4.** *State v. Steelman*, 93 S.W.3d 102, 108 (Tex. Crim.App.2002).

na." [5]  The Court's reasoning is unsound, and its holding is regrettably broad.

I respectfully dissent.

KEASLER, J. filed this dissenting opinion, joined by HERVEY, J.

Amazing.

Under the majority opinion, if the officers had heard a gunshot followed by a loud groan inside the house, they would not have had probable cause to arrest the person answering the door.  After shutting the door behind him, he could have walked calmly to his car, driven away, and flown to Tierra del Fuego, with the officers powerless to stop him.

## I.  Probable Cause

To understand why the majority's result is so wrong, it is helpful to review the concept of probable cause.  Black's Law Dictionary states that probable cause " . . . amounts to more than mere suspicion but less than evidence that would justify a conviction." [1]  So what is required is certainly less than proof beyond a reasonable doubt, clear and convincing evidence, or a preponderance of evidence.  It is defined as "[a] reasonable ground to suspect that a person has committed or is committing a crime or that a place contains specific items connected with a crime." [2]

Over 50 years ago, the Supreme Court elaborated on probable cause. In *Brinegar v. United States*, [3] the Court stated that,

"[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.  The standard of proof is accordingly correlative to what must be proved."

The Court noted that "this means less than evidence which would justify condemnation or conviction." [4]  Instead, probable cause exists when the facts within the police officers' knowledge—where they had reasonably trustworthy information—are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." [5] The Court explained that, "[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." [6]

The Court has reminded us since then that probable cause requires only a probability or substantial chance of criminal activity and not a prima facie showing of such activity. [7]

Other courts have further elaborated on the concept.  The First Circuit notes that "[t]he probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable.  Their con-

---

**5.** *Id.* at 109.

**1.** BLACK'S LAW DICTIONARY, 7th Ed. 1218 (West 1999).

**2.** *Id.*

**3.** 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

**4.** *Id.* at 175, 69 S.Ct. 1302 (internal quotation marks omitted).

**5.** *Id.* at 175–76, 69 S.Ct. 1302 (internal citations and quotation marks omitted).

**6.** *Id.* at 176, 69 S.Ct. 1302.

**7.** *Illinois v. Gates*, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

clusion that probable cause exists need only be reasonable." [8] The Seventh Circuit has stated that, "[i]n recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard. In practice, then, it can be said that probable cause—the area between bare suspicion and virtual certainty—describes not a point but a zone, within which reasonable mistakes will be excused." [9] And our own Fifth Circuit has said that "[p]robable cause must be judged not with the logic of cold steel, but with a common sense view to the realities of everyday life." [10]

Indeed, even we have recognized that "[p]robable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." [11] We have also recognized that "reasonable inferences" arising from the evidence may be considered in determining whether probable cause existed. [12]

With all this in mind, let us look at the facts as set out in the majority opinion. The police had a tip that drug dealing was taking place at the residence. They looked in the window and saw four men inside. They went to the front door and knocked. So far, so good. Nothing in our law prevents any officer from knocking politely on any closed door. [13]

When Ian Steelman opened the door, the officers smelled the odor of "burnt marijuana." The anonymous tip was thus corroborated. Now, possession of marijuana is a crime, and the majority agrees that the officers had probable cause to believe that a crime had been committed. Of course, the marijuana did not spontaneously ignite. Somebody inside was smoking or had smoked it. And in order to burn it, one must possess it.

The fact that Ian Steelman stepped outside rather than inviting the officers inside might not increase their cause for suspicion, but it certainly did not reduce it. And the fact that he attempted to shut the door behind him when retrieving his identification did not help him, either.

When the officers first smelled the marijuana emanating from the residence, they had probable cause—not proof beyond a reasonable doubt, not clear and convincing evidence, not a preponderance of evidence—but probable cause to suspect that each person in that house possessed marijuana. That belief might subsequently prove to be mistaken, but we do not judge probable cause by hindsight. Affirmative links must be established, but that occurs at trial.

## II. It Doesn't Matter That There Was More Than One Person

The Court discounts these facts and their inferences because of the three other

**8.** *United States v. Winchenbach*, 197 F.3d 548, 555–556 (1st Cir.1999).

**9.** *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir.1994) (internal citations and quotation marks omitted), *cert. denied*, 513 U.S. 1128, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995).

**10.** *United States v. Agostino*, 608 F.2d 1035, 1037 (5th Cir.1979).

**11.** *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim.App.), *cert. denied*, 531 U.S. 980, 121 S.Ct. 430, 148 L.Ed.2d 438 (2000); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).

**12.** *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991).

**13.** *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex.Crim.App.1995).

people in the home. The Court concludes that the officers could not differentiate between the respective culpability of Steelman as compared with the other three individuals and, therefore, no probable cause existed with respect to Steelman. The only authority the Court cites for this approach is an isolated Illinois lower appellate court case from 1974,[14] as quoted in Professor LaFave's Search & Seizure treatise.[15] But there is a wealth of authority against the majority's approach. Indeed, other states that have addressed this issue—Alabama, Arkansas, Colorado, Florida, Iowa, Oregon, Pennsylvania, and Wisconsin—have concluded that the police will have probable cause to arrest each of the individuals suspected of criminal activity, even without knowing for certain which of them is guilty.

A good starting point is the Supreme Court of Arkansas's opinion in *Brunson v. State*.[16] In that case, the defendant was a passenger in a car that was lawfully stopped. The officer smelled marijuana. Based on that odor, the officer searched each person in the car and found marijuana on the defendant. The defendant argued that the search was made without probable cause. The court disagreed, stating that "upon smelling the marijuana or its smoke emanating from the vehicle, Detective Breckon had probable cause to believe that an offense had been or was being committed in his presence. Quite simply, the smell of the marijuana or its smoke emanating from a vehicle constitutes facts and circumstances sufficient to warrant a person of reasonable caution to believe that a controlled substance has been or is being possessed or delivered or both, and, thus, that a violation of law has occurred or is occurring."[17] The court concluded that the officer "had probable cause to arrest [both of] the occupants of the vehicle."[18] The court was "not persuaded" by the defendant's argument "that an individualized suspicion or cause is required to arrest each occupant under the facts and circumstances presented in this case."[19] The court explained that "[s]uch an argument would lead to the illogical conclusion that none of the four occupants could have been arrested even though the smell of marijuana or its smoke was emanating from the enclosed space of the vehicle where all four occupants were present."[20]

Last year, the Supreme Court of Iowa expounded the notion. In *State v. Horton*,[21] the defendant was a passenger in a vehicle lawfully stopped for a license plate violation. When questioned about contraband in the truck, the driver stated that there were marijuana cigarettes in the ashtray. The police eventually arrested both the driver and the defendant based on those cigarettes. On appeal, the defendant argued that her lawyer had been ineffective in failing to challenge the search of her person as being incident to an unlawful arrest. She argued that the cigarettes in the truck failed to give the police probable cause to arrest her as opposed to the driver.

---

**14.** *People v. Harshbarger,* 24 Ill.App.3d 335, 321 N.E.2d 138 (Ill.App.Ct.1974).

**15.** 2 William LaFave, Search & Seizure § 3.6(b) (3d ed.1996).

**16.** 327 Ark. 567, 940 S.W.2d 440 (Ark.1997), *cert. denied,* 522 U.S. 898, 118 S.Ct. 244, 139 L.Ed.2d 173 (1997).

**17.** *Id.* at 571, 940 S.W.2d at 441–42.

**18.** *Id.* at 572, 940 S.W.2d at 442.

**19.** *Id.*

**20.** *Id.*

**21.** 625 N.W.2d 362 (Iowa 2001), *cert. denied,* 534 U.S. 928, 122 S.Ct. 288, 151 L.Ed.2d 212 (2001).

The Court disagreed. The court pointed out LaFave's lengthy discussion of the degree of probability required to arrest when police are investigating a crime and have information which points to more than one person.[22] The court quoted LaFave's hypothetical case from the Torts Restatement:

A sees B and C bending over a dead man, D. B and C each accuse the other of murdering D. A is not sure that either B or C did the killing, but he has a reasonable suspicion that either B or C killed D. A is privileged to arrest either or both.[23]

The Iowa Court explained that, for probable cause to exist, "the police need not have firm evidence which might lead to a conviction, or even to an indictment, but merely sufficient information to cause a reasonable man to believe that the defendant was involved in a crime."[24] The court concluded that "a reasonably cautious person would be warranted in believing Horton was in possession of marijuana, and this satisfies the test for probable cause to arrest and search her."[25] As a result, the defendant's trial counsel had not been ineffective because a motion to suppress would not have been successful.

In *Blake v. State*,[26] the Alabama Court of Criminal Appeals held that the odor of burning marijuana coming from a vehicle provides probable cause both to search the vehicle and to arrest the occupants of the vehicle. The Court explained, "Under the facts of this case, where two persons were sitting in the front seat of an automobile, we do not believe that an individualized suspicion was required to arrest either Blake or his passenger. To require such individual suspicion in all cases would be to say that even where the odor of burning marijuana is emanating from the relatively close confines of an automobile—therefore clearly justifying a search of the automobile—if the occupants of the vehicle have the foresight to quickly secrete the controlled substance in their pockets, they may drive away after the search of the vehicle proves fruitless."[27]

The Supreme Court of that state agrees that when the police have probable cause to believe that either or both of two people have committed a crime, they have probable cause to arrest both of them. In *State v. Johnson*,[28] the police gathered information indicating that either the defendant or his girlfriend injured her child in such a way as to cause the child's death. Although the trial court had concluded that it was not "any more reasonable" to suspect the defendant than his girlfriend, the Supreme Court held that "[p]robable cause to arrest one person, however, does not depend on a lack of probable cause to arrest another person."[29] The court explained that "[t]he level of evidence needed for a finding of probable cause is low. An officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."[30]

22. *Id.* at 365–66.

23. LaFave, *supra,* at § 3.2(e).

24. *Horton,* 625 N.W.2d at 365 (internal citations and quotation marks omitted).

25. *Id.* at 367.

26. 772 So.2d 1200 (Ala.Crim.App.2000).

27. *Id.* at 1206–07.

28. 682 So.2d 385 (Ala.1996).

29. *Id.* at 387.

30. *Id.* at 387–88 (internal citations and quotation marks omitted).

The same was made clear by the Supreme Court of Wisconsin. In *State v. Mitchell*,[31] the defendant and his companion were in a parked car. When the police officer asked them if there was a problem, he smelled burned marijuana and saw smoke in the vehicle. He arrested both men for possession of marijuana. The court concluded that "[b]ased on the presence of both the odor of marijuana and the smoke, Officer Smith had reason to believe that defendant, his passenger, or both had been smoking marijuana, and thus possessing, marijuana. The fact that there were two occupants in the vehicle is not fatal to a finding of probable cause to arrest defendant because probable cause does not mandate that it is more likely than not that the defendant committed the offense."[32] The officer was not required to know with certainty at the arrest stage which of the two people possessed the marijuana; he had probable cause to arrest both of them for that offense.

In *Commonwealth v. Chase*,[33] Pennsylvania's Superior Court reached the same result. There, an undercover officer radioed his partner to tell him that he had just purchased drugs from a black man in a blue shirt at the corner of Tackawanna and Orthodox. The other officer then arrived at the scene, where he saw two black men, both in blue shirts. The defendant ran, and the officer arrested him. The court found that the officer had probable cause to arrest the defendant. The court pointed out that "in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond a reasonable doubt' standard which we apply in determining guilt or innocence at trial."[34] The court there specifically rejected the trial court's statement that "you cannot have probable cause to think that both are guilty when it is clearly a crime committed only by one person."[35] In rejecting that conclusion, the superior court stated, "We do not agree that the police could never have probable cause to arrest two persons if only one person has committed the crime. While the law requires that probable cause have a fairly narrow focus, thereby precluding, for example, dragnet operations, we do not believe that the focus must in all situations narrow down to a single suspect. . . . Under some circumstances, there may be probable cause to believe that either of two suspects was the perpetrator of the criminal act."[36]

Oregon agrees. In *State v. Jordan*,[37] the police received a tip from an informant that a fugitive (the defendant) was living in a particular house. They went to the house to execute the arrest warrant. Once there, they arrested one person, believing that she might be the fugitive, but they were unsure. They continued to look in the house and eventually found the real

**31.** 167 Wis.2d 672, 482 N.W.2d 364 (Wis. 1992).

**32.** *Id.* at 684, 482 N.W.2d at 368.

**33.** 394 Pa.Super. 168, 575 A.2d 574 (1990).

**34.** *Id.* at 172, 575 A.2d at 576.

**35.** *Id.* at 175–76, 575 A.2d at 577–78.

**36.** *Id.* at 176, 575 A.2d at 578 (citations and internal quotations omitted). *See also Commonwealth v. Bunch*, 329 Pa.Super. 101, 477

A.2d 1372, 1378–82 (1984) (evidence that three of four individuals in a car had committed robbery provided the probable cause required to justify the arrest of all four occupants).

**37.** 36 Ore.App. 45, 583 P.2d 1161 (1978), *aff'd*, 288 Or. 391, 605 P.2d 646 (1980), *cert. denied*, 449 U.S. 846, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980).

fugitive, whom they arrested. The defendant argued that once the police arrested the first person, they had no probable cause to continue looking in the house. The court disagreed, noting that "[t]he underlying assumption of defendant's theory is that probable cause is finite and, if it is expended on one suspect, there cannot be enough left for another suspect." [38] The court found that theory untenable, using for support Professor LaFave's hypothetical case discussed earlier.[39]

The Colorado Supreme Court is also in line. In *People v. Sutherland,*[40] the defendant and his driving companion were at the hospital following a fatal automobile collision in which their car collided head-on with another vehicle. The police officer did not know which of the two had been driving, so he had the hospital staff draw the blood of both of them. The court concluded that "under the circumstances of this case where two persons each claimed the other was the driver of a vehicle involved in a suspected criminal offense, the officer had reasonable grounds to obtain a blood sample from each suspect. We hold that the officer had probable cause to arrest the defendant and to obtain a blood specimen without the consent of the defendant." [41]

And the same is true of Florida. In *State v. Hernandez,*[42] officers drove past a large group of people who smelled like marijuana. The court held that "[t]he odor of marijuana gave the officers probable cause to believe the members of the group had marijuana in their possession and, therefore, to search each person who was present." [43]

Judge Cochran implies that there was some dispute about whether the officers actually smelled marijuana. Her concurring opinion points out that the trial court found "some of the testimony by the police was 'incredible.' " [44] Significantly, though, the testimony which the judge found unbelievable had nothing to do with the odor of marijuana. On the contrary, the judge explicitly found that "[w]hen the door was opened, Officers Vines and Craft smelled the odor of burned marijuana" and, when they went in the home, they "again smelled the odor of burned marijuana." This finding is supported by the testimony of both those officers.

What the trial judge did not believe was Officer Craft's testimony that he saw a marijuana cigarette in an ashtray inside the home. Not believing this testimony, the judge found that "[n]one of the officers observed any marijuana or other contraband inside the residence." That finding, of course, has nothing to do with our analysis of whether the police had probable cause to enter the home.

### III. It Doesn't Matter That This Involves a Home

The majority's reference to Art. 14.05 implies that it may find it relevant to the probable cause analysis that this case involved entry into a person's home. This is certainly Judge Cochran's view in her concurring opinion. She cites the opinion of the court below for the proposition that police officers must obtain a warrant before arresting a person inside his home

---

**38.** *Id.* at 48, 583 P.2d at 1163.

**39.** *Id.* at 49, 583 P.2d at 1163.

**40.** 683 P.2d 1192 (Colo.1984).

**41.** *Id.* at 1196 (internal citations omitted).

**42.** 706 So.2d 66 (Fla.Ct.App.1998).

**43.** *Id.* at 67.

**44.** *Concurring opinion,* at 111.

"absent a few, clear exceptions." [45]  As the court of appeals acknowledged, one of those "exceptions" is when the police have probable cause plus "the existence of exigent circumstances such as the threat of the imminent destruction of evidence." [46]

At this point, let me point out, to use Judge Cochran's words, "what this case is not about." [47]  It is not about whether the "emergency doctrine" [48] or exigent circumstances existed for the police to enter the Steelmans' home.  Nobody has argued any emergency doctrine in this case.  Moreover, Steelman himself has never contested the existence of exigent circumstances to enter the home.

At the suppression hearing, two officers testified to the existence of exigent circumstances.  Officer Vines testified that "the main reason for handcuffing them [was] . . . to prevent any evidence from being destroyed." ˙ Additionally, during Officer Craft's testimony, the prosecutor asked whether the evidence could have been destroyed in the amount of time it would take to obtain a search warrant, and Officer Craft responded, "Oh, yes, sir."  The prosecutor followed up by asking whether it would have been "practical in your mind to . . . stand outside the residence while another officer went to procure a search warrant?"  To which Officer Craft responded, "No, sir . . . for the reason that . . . we need to . . . make sure they don't destroy any evidence." During arguments, the prosecutor argued that exigent circumstances existed based on these officers' testimony that the marijuana could have been destroyed.  Steelman never contested the prosecutor's argument on this point.

On appeal to the court of appeals, Steelman never argued that the police lacked exigent circumstances to enter the home.  His entire argument was that the police lacked probable cause and reasonable suspicion to knock on the door and enter the home.  In the court of appeals' opinion, exigent circumstances to enter the home was not an issue.  The court set forth the State's argument as being that probable cause existed for the arrest and the search, then proceeded to analyze whether probable cause did exist.[49]  The court concluded that the officers did not have probable cause to arrest or search.[50]  While the court stated that a search of a home requires both probable cause and exigent circumstances,[51] that comment was the only mention in the opinion of that requirement;  the court's analysis and conclusion focused on what it perceived to be the lack of probable cause.

In our Court, the State argues that the police had probable cause to arrest and search and that there were exigent circumstances justifying entering the home.  Steelman responds that the police lacked reasonable suspicion and probable cause.  Again, Steelman does not contend that the police lacked exigent circumstances.  This case is simply not about exigent circumstances—it is about probable cause.

What the majority fails to grasp is that probable cause is probable cause, whether it be to search or arrest in a car, on the street, or in a residence.  Either the police have it or they don't.  And whether they had it is all that is before us in this case.

**45.**  *Id.*

**46.**  *State v. Steelman,* 16 S.W.3d 483, 489 (Tex. App.-Eastland 2000).

**47.**  *Concurring opinion,* at 110.

**48.**  *Id.* at 110.

**49.**  *Steelman,* 16 S.W.3d at 487–89.

**50.**  *Id.* at 488–90.

**51.**  *Id.* at 489.

Neither Art. 14.05 nor the fact that Steelman was arrested in his home changes the probable cause analysis.

Judge Cochran's concurrence says that "[t]his case is about the right of citizens to be left alone in the privacy of their homes."[52] To do what? The majority answers that question in no uncertain terms: it is the right to be left alone to smoke and possess marijuana in the privacy of their homes with no interference from the police, even if the police have probable cause to believe (correctly in this case) that the citizens are doing so. If you knock on a door, someone opens it, and you smell burning marijuana wafting from inside the house, you must leave the inhabitants to smoke it in peace.

## IV. What Matters Will Be the Consequences

The ramifications of the majority's opinion take one's breath away. Consider the hypothetical case set out on the first page of this opinion. Suppose the officers look in the window and see four men sitting at a poker table. There is a pistol in the middle of the table. One of the men is slumped over the table, his head face down on it. Gun smoke lingers in the air. No one says a word. The three living poker players would be free to leave, because in the majority's view, there is no probable cause to believe that any one of them committed an offense.

Or take the apocryphal story of the officer spotting a car weaving all over the road. The officer chases the car, siren blaring, red lights flashing. There are three people in the car. It pulls off the road suddenly, and the two front seat occupants jump into the back seat before the officer comes to a stop.

The officer walks up to the car and asks, "Which one of you was driving?"

The three reply in unison, "Guess!"

Under the majority's view, none could be arrested.

The examples could go on and on. Suffice it to say that today's opinion will affect hundreds of thousands of future cases, because according to the majority, anytime there are two or more people involved at a crime scene, and there is any ambiguity as to which of them is the perpetrator, officers lack probable cause to arrest any of them. This is preposterous.

Does the majority think that marijuana prosecutions are somehow different from other cases, and that its holding will be limited to cases involving marijuana? If so, what is so different about possession of marijuana? The Legislature has made it a crime, to be sure. But the Court's opinion thumbs its nose at the Legislature. It is as if we say today, "Ha! Ha! You can make smoking marijuana a crime, but we can make it impossible to arrest anyone for it!"

How often is it that facts similar to the ones in this case arise in a police officer's daily work? I suspect that it is often. And when these situations arise, there is usually not one guilty person standing off to the side with a "Guilty" sign on his head. Until today, the police were permitted to arrest those people when they reasonably believed they were participating in a crime. Under today's opinion, these previously reasonable arrests will no longer be possible.

The majority couches its opinion in terms of statutory law, but this case has nothing to do with our state statutes because the statutes are satisfied. This reminds me of the old riddle: How many legs does a dog have if you call its tail a

52. *Concurring opinion,* at 110.

leg? The answer, of course, is four. Calling a tail a leg does not make it a leg. And calling this a statutory issue does not make it so. This case is about probable cause, pure and simple.

The messages of the majority's opinion, lest they be lost, are these: In Texas, we say to criminals, "The only way you will get caught for breaking the law is if you act alone. If you act with a group of other lawbreakers, we will never be able to tell which of you is guilty at first glance, so we will not arrest any of you. Be sure to stay in a group, and you will be untouchable." And we also say, "Feel free to smoke marijuana in your own home—we would not dare stop you."

Perhaps the majority is confusing probable cause with the quantum of proof needed to convict at trial. It is hard to tell. Regardless, the majority erects barriers to arrest, search, and seizure that go far beyond those required by our Constitutions, statutes or case law.

I dissent with all the vigor at my command.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

I respectfully dissent. The Court holds, as a matter of state law, that the marijuana the police seized from the search of appellees' home should have been suppressed under Article 38.23(a) because the appellees were illegally arrested under Articles 14.01 and 14.05. This is an erroneous holding because no causal connection exists between the appellees' arrests and the search of the appellees' home resulting in the seizure of the marijuana. For purposes of determining whether the marijuana should have been suppressed under Article 38.23(a) the search of appellees' home and their arrests are unrelated and have nothing to do with each other.

The police searched appellees' home pursuant to a validly issued, and untainted by any illegal arrest that may have occurred, search warrant that was based on probable cause to believe that marijuana would be found in appellees' home. But, because the State abandoned this search warrant theory and then lost on the warrantless search theory at the suppression hearing in the trial court, it would not be appropriate to **reverse** the trial court's ruling on the search warrant theory. *See State v. Mercado*, 972 S.W.2d 75, 77–78 (Tex.Cr.App.1998) (appellate court generally should not **reverse** trial court's ruling on theory not presented to the trial court). Therefore, the search of appellees' home must be analyzed under the fiction that a warrantless search occurred even though it is undisputed that no warrantless search actually did occur.

As I understand it, the Court's opinion decides that the initial police entry into the appellees' home for the purpose of making a warrantless arrest of them was unlawful because the police lacked probable cause to believe that appellees had committed an offense in the presence of the police. *See* Article 14.01, 14.05. And, according to the Court's opinion, since this initial police entry into the appellees' home for the purpose of making these warrantless arrests was unlawful, then the police entry into the appellees' home for the purpose of searching it for marijuana must also have been unlawful. This, however, confuses the issue of the validity of appellees' warrantless arrests with the issue of the validity of the warrantless search of their home—neither of which have anything to do with the other for purposes of determining whether the marijuana found during the search of appellees' home should have been suppressed under Article 38.23(a). Different considerations apply to each one of these legally distinct issues.

## THE SEARCH OF THE HOME

No reasonable person can dispute that the odor of burnt marijuana inside the appellees' home provided the police with probable cause to believe that there was marijuana inside the appellees' home. *See Moulden v. State*, 576 S.W.2d 817, 819 (Tex.Cr.App.1978) (odor of burnt marijuana in defendant's car provided police with probable cause to believe that there was marijuana in the car). Exigent circumstances also existed for the police to make a warrantless search of appellees' home since the marijuana evidence could have been destroyed or disposed of during the time it would have taken the police to get a warrant. *Compare Taylor v. United States*, 286 U.S. 1, 52 S.Ct. 466, 467, 76 L.Ed. 951 (1932) (no exigent circumstances existed to excuse police from obtaining a search warrant since "there was no probability of material change in the situation during the time necessary to secure such warrant").

A warrantless search of appellees' home, therefore, would not have violated the federal constitution. No state law provision would have prohibited this warrantless search either. That the appellees' may also have been illegally arrested under state law at the time of a warrantless search of their home is of no consequence in determining the validity of this warrantless search since any illegal arrest had no causal connection to the search of appellees' home and the seizure of the marijuana.[1] *See* Article 38.23(a) (requiring the suppression of evidence that is "obtained in violation" of the law); *Johnson v. State*, 871 S.W.2d 744, 749–51 (1994) (Article 38.23 requires the exclusion of evidence

only when it is "obtained in violation" of the law).

## APPELLEES' WARRANTLESS ARRESTS

Even if appellees' warrantless arrests had some causal connection to the seizure of the marijuana from their home, the marijuana still should not have been suppressed because these warrantless arrests did not violate state law. The Court's opinion decides that Ian's initial warrantless arrest was unlawful because the police lacked probable cause to believe that he was in possession of marijuana, and that this initial arrest of Ian tainted Leo's subsequent arrest. However, a proper application of the probable cause standard requires a decision that the police had probable cause (more than a bare suspicion) to believe that Ian was in possession of marijuana based on their observing him in an area where marijuana had very recently been smoked. In *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Cr.App.1997), this Court discussed the legal definition of probable cause:

> While this principle [probable cause] is well-established, the Court [of Appeals] failed to appreciate the definition of probable cause. Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. [Citation Omitted] The determination of the existence of probable cause concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." [Citation Omitted] Probable cause deals with

---

1. It is significant that the police did not seize the marijuana as a result of a search of the appellees themselves. It is also significant that the police did not seize the marijuana during the search of appellees' home because

of anything the appellees told them during any illegal arrest. It, therefore, cannot be said that the seizure of the marijuana was in any way the "fruit" of an illegal arrest.

probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. [Citations Omitted] The rule of probable cause seeks to accommodate the sometimes opposing interests of safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts. [Citation Omitted].

On this record and under this legal standard of probable cause, the police could have reasonably determined that a fair probability existed that Ian was in possession of marijuana.

I, therefore, respectfully dissent.