# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00668-CR
## NO. 03-09-00669-CR

**Sammie Lee Ford, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NOS. CR22,296, CR22,297, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Sammie Lee Ford, Jr. of aggravated robbery (cause number 03-09-00668-CR) and possession of more than 400 grams of a controlled substance with intent to deliver (cause number 03-09-00669-CR). *See* Tex. Penal Code Ann. §§ 29.02(a), .03(a) (West 2003) (robbery and aggravated robbery); Tex. Health & Safety Code Ann. § 481.112 (f) (West 2010) (drug possession). The trial court imposed punishment of forty years' imprisonment for each offense and provided that the sentences should run concurrently. *See* Tex. Penal Code Ann. § 12.32 (West Supp. 2009) (punishment ranges for first-degree felonies).

Ford's appellate attorney filed a brief asserting that the appeal is frivolous and without merit and a motion seeking leave to withdraw as counsel. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Jackson v. State*, 485 S.W.2d 553, 553 (Tex. Crim. App. 1972). In response, Ford filed a pro se brief asserting fifteen points of error. We affirm the trial court's judgments of conviction.

## Summary of the Evidence

Maria Gamino testified that at about midnight on August 26, 2008, she was asleep in her bedroom in Cameron, Texas, with her three-year-old son. Jose Llanas, her then-fiancé, from whom she has since separated, was in the living room. According to Gamino, she woke to yelling and saw two men push Llanas into the bedroom. The men pushed Llanas to the ground and tied his hands with black plastic "zip-ties." Both men were African-American and were armed and dressed in dark clothing, with t-shirts wrapped around their faces. The taller man did most of the talking and wore black and red Air Jordan shoes. Gamino testified that she heard the taller man's voice clearly, saying, "It was unique because it was so deep, very masculine." Gamino feared the men were going to kill her and her son, but instead they ransacked the house and stole two cell phones, a camcorder, about $1,800 in cash, her son's piggybank, and the keys to a Ford truck. After the intruders left, Gamino cut the ties from Llanas's hands and ran to the house of a trooper who lived down the street.

Gamino testified that the next day, two people she did not know told Llanas that a man named Sammie Ford had robbed them and that Ford was staying at a Best Western Motel in Rockdale and had tried to sell them a camcorder. Gamino gave that information to the police and drove with Llanas to Rockdale to go to Wal-Mart. When they pulled into a fast-food restaurant in Rockdale, Llanas saw Ford inside and recognized him as one of the men who had robbed them. Llanas confronted Ford, who denied any involvement. Gamino testified that although she did not recognize Ford's face, when she heard him speak, she "knew that it was the same person that had been inside my house."

2

Police witnesses testified that the police were called to the scene and that Ford was eventually arrested. The police found "a large quantity of cash in his pockets," along with a key card for a room at the Best Western. Ford asked that the room key be given to his wife, Christina Ford. The police interviewed Christina Ford, who said Ford told her he had "hit a lick" meaning he "had robbed some Mexicans over in Cameron earlier that day." She also gave the police permission to search the motel room. The police obtained a warrant and searched Ford's room, where they found dark clothing, red and black Air Jordans, and black plastic zip-ties that matched those used in the robbery. They also found a digital scale, a brick of cocaine weighing about one kilogram, and more than $3,000 in cash. They did not recover any of the items stolen from Gamino and Llanas. Two days after the robbery, Llanas was arrested while driving a car containing a large quantity of cocaine and sentenced to federal prison for drug trafficking. The State argued that Llanas was a drug dealer whose supply was stolen by Ford and Ford's accomplice and that Llanas was returning from replenishing his supply when he was arrested two days later. There was testimony that the police had suspected for some time that Llanas was dealing drugs and believed he was using Gamino's house as a "stash house" for his drug supply. Gamino denied knowing that Llanas was dealing drugs or might have hidden drugs in her house.

Christina Ford testified that at the time of the robbery, she and Ford had been separated for a month or two. The morning after the robbery, Ford asked her to go with him to pay some bills. They got Ford's vehicle out of impound, where it had been for about two months, and retrieved some items from a pawnshop. Ford then got a room at the Best Western, and later in the day, Christina Ford and her daughter went to the motel to go swimming. While she was in Ford's

3

room, she saw cash, bags of drugs, and a brick of cocaine. She asked Ford where he had gotten the drugs, and he said he had "hit a lick." He also told her not to spend time in Cameron because "some Mexicans" were looking for him.

## Ford's Points of Error

In his first point of error, Ford complains that the evidence is insufficient to support the robbery conviction.[1] Specifically, he argues that no physical evidence tied him to the robbery.[2] Although the property taken in the robbery was not found in Ford's possession, Gamino testified that two men broke into her house and robbed her and Llanas at gunpoint, putting her in fear for her and her son's life, and that she and Llanas saw one of the robbers at a restaurant the next day. She said Llanas recognized Ford's face, and she recognized Ford's voice. Further, Llanas was told that someone named Sammie Ford had committed the robbery. Finally, Ford's wife testified that Ford told her that he had robbed "some Mexicans" in Cameron, that she saw a large quantity of cash in

---

[1] Ford complains that the evidence is legally and factually insufficient, but the court of criminal appeals recently held that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

[2] It is not entirely clear whether Ford intended to complain about the evidence supporting the drug conviction, but in his argument, he states only that the drug charge should not have been consolidated with the robbery charge and does not attack the evidentiary support for the drug conviction. We therefore assume Ford attacks only the evidence supporting the robbery conviction. However, even if he had attacked the drug conviction, the evidence is sufficient to show that Ford had custody and control over the motel room and its contents and thus to support the drug conviction: when the police executed their search warrant on the motel room, they found large quantities of drugs, cash, and a digital scale; the room was rented by Ford, who gave his wife the room key; Ford's wife gave the key to the police and told them she had seen drugs and money in the room. *See Armstrong v. State*, 82 S.W.3d 444, 449 (Tex. App.—Austin 2002, pet. ref'd) (totality of circumstances must show defendant's knowledge of and control over drugs).

Ford's motel room, and that the day after the robbery, Ford had enough money to retrieve his car from impound and get some of the Fords' property from a pawnshop. The evidence is sufficient to support the aggravated robbery verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("[d]irect and circumstantial evidence are treated equally").

Ford argues in his second point of error that his warrantless arrest was improper because there was no probable cause to arrest him for robbery. However, Llanas recognized Ford's face and Gamino recognized his voice. Ford had a vehicle at his disposal that would allow him to leave the scene if not detained for investigation. This evidence provided a sufficient basis for the police to arrest Ford for the felony of aggravated robbery. *See* Tex. Code Crim. P. Ann. art. 14.04 (West 2005) ("Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (police may make warrantless arrest if there is probable cause and arrest falls within exception to warrant requirement).

Ford next complains that the search warrant was improper because the police lacked probable cause. He argues that there was no corroboration of the information that Ford had tried to sell a camcorder to the unidentified people. The affidavit recites that Llanas and Gamino learned Ford's name from the unidentified people, but it also states that Llanas and Gamino recognized Ford in the Rockdale restaurant, Llanas by sight and Gamino when she heard Ford's voice, and that Christina Ford told the police that Ford had admitted to committing a robbery in Cameron and that she saw large sums of cash and cocaine in the motel room. The affidavit provided to the magistrate

5

relied upon more than the anonymous tip and provided sufficient probable cause for the magistrate to believe that the items stolen from Llanas and Gamino might be found in the motel room. *See Rodriguez v. State*, 232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007) (search warrant should be upheld if affidavit provided magistrate with probable cause that particular item will be found in particular location); *Hespeth v. State*, 249 S.W.3d 732, 736-37 (Tex. App.—Austin 2008, pet. ref'd) (courts should defer to magistrate and uphold warrant if magistrate had substantial basis to conclude search would uncover evidence of specific crime and if affidavit established probable cause).

In his third point of error, Ford complains that the search of his motel room was improper because the search warrant did not put limits on the search and instead allowed the police to do "general exploratory rummaging." However, a search warrant, while it may not allow unfettered discretion to "burrow through a person's possessions looking for any evidence of a crime," need only provide enough specifics that the officer executing the warrant will "reasonably know what items are to be seized." *Porath v. State*, 148 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The affidavit recites that Gamino and Llana reported the home robbery, told the police that "a friend who wished to remain anonymous" told them that Ford had tried to sell the friend a stolen video camera, and then spotted Ford at a restaurant in Rockdale. The affidavit further recites that Ford's wife told the police that Ford said he had committed a robbery in Cameron. The affidavit specifies that the officers could search Ford's motel room for evidence related to the robbery, and they could thus search anywhere in the motel room where one of the stolen items might be concealed.[3] In a related point of error, Ford argues that the trial court should have granted his

---

[3] While lawfully on the premises, the officers could also seize the drugs found in the course of the lawful search. *See Arrick v. State*, 107 S.W.3d 710, 719 (Tex. App.—Austin 2003, pet. ref'd).

motion to suppress. In his argument, Ford asserts that the police did not obtain Gamino's identification of Ford and that "[n]o evidence of a robbery was presented to show the right person was arrested." He asserts that the police improperly secreted witnesses and that several witnesses were not called to testify at the suppression hearing. However, there is no requirement that the State call all of its witnesses at a suppression hearing, and as noted above, the State provided sufficient evidence to support both the warrantless arrest and the search warrant. Therefore, the evidence seized through Ford's arrest and the search of the motel room was properly obtained.

Ford next complains that his double-jeopardy rights were violated when he was retried on the drug possession charge after an initial trial that resulted in a hung jury. He also argues that the same evidence was used to prove both drug possession and aggravated robbery and that the State improperly sought two convictions when the evidence showed only one offense was committed. However, aggravated robbery is a crime distinct from drug possession, and there is no bar against one piece of evidence being used to prove more than one offense, especially when the two offenses are related in some way, as was the case here. As to the hung jury, "[t]he law regarding double jeopardy in such cases is well-settled. A trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which a defendant is subjected." *Ex parte Cantu*, 120 S.W.3d 519, 521 (Tex. App.—Corpus Christi 2003, no pet.) (citations omitted).

Ford further contends that his rights were violated when the State consolidated the drug possession and robbery charges for trial.[4] He asserts that because Gamino and Llanas did not tell the police that drugs had been stolen in the robbery, the police improperly tied the two charges

---

[4] Ford also asserts that the State committed misconduct by presenting false evidence, but there is nothing in the record to support that assertion.

together. However, because the charges involve overlapping evidence and testimony, it was more efficient to try the charges together rather than going through two trials, and section 3.02 of the penal code allows the consolidation of criminal charges. *See* Tex. Penal Code Ann. § 3.02 (West 2003). Although a defendant may request a severance of consolidated charges under section 3.04, Ford did not object to the consolidation or seek a severance. *See id.* § 3.04(a) (West Supp. 2010).

Ford raises several points complaining that his confrontation rights were violated. He argues that the State should have identified and called as witnesses the people who gave Llanas Ford's name and complains that because the State did not call Llanas, who was in federal prison, Ford was denied the opportunity to cross-examine him. The confrontation clause bars the use of "out-of-court testimonial statements by a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *Martinez v. State*, 327 S.W.3d 727, 738 (Tex. Crim. App. 2010). The State did not present "out-of-court testimonial statements" by Llanas or the people who gave Llanas Ford's name. *See id.*[5]

In his eighth point, Ford complains that the State only called two police officers to testify at the suppression hearing, arguing that the State should have presented all of its witnesses at the hearing. However, a suppression hearing addresses only the propriety of the seizure of evidence, and the State is not obligated to present its entire case or all its witnesses. In his ninth

---

[5] Ford argues that the State "secreted witnesses" because there was testimony in Ford's earlier trial, which ended with a hung jury, that the cocaine was tested and handled by crime labs in both Waco and Austin. However, that evidence was not introduced in the trial at issue here, and we cannot consider evidence that was not introduced into this record. *See Lewis v. State*, 504 S.W.2d 900, 904 (Tex. Crim. App. 1974). Further, Ford has not explained how the analysis by more than one lab or technician harmed him, other than to assert that there was a broken chain of custody for the evidence, an assertion not supported by the record.

point, Ford complains that the State did not ask Ford's wife about the stolen property or whether she knew anything about the robbery itself. He argues that because there was no evidence that Ford's wife saw any of the stolen items or knew about the robbery, her testimony was improper. However, Ford's wife testified about seeing drugs and cash in Ford's motel room, as well as Ford's statements to her that he had committed a robbery in Cameron the day before. Her ignorance of the details of the robbery or the items stolen does not render her testimony improper.

Ford complains in his tenth point that the trial court should have admitted notes from a police interview with Llanas after the robbery. Ford's attorney attempted to introduce the police report to show that Llanas was lying about the robbery, but the State objected that the report contained hearsay and that Llanas was not there to testify about what he actually said or what he meant to say. The trial court sustained the State's objection, which Ford complains shifted the burden from the State to Ford. Even if there was merit to this contention, Ford has not shown how the report would have aided his defense, much less that his defense was prejudiced by the exclusion of the report or that his constitutional rights were violated. *See* Tex. R. App. P. 44.2(b).

Ford contends in his twelfth point that the State made prejudicial comments during its closing arguments when it referred to Cedric Barnes as Ford's accomplice despite the fact that Barnes was not charged. "The approved general areas of argument are: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). In his closing arguments, Ford's attorney argued that the State's witnesses were lying and said, "And then [Gamino] tells you on the witness stand yesterday that while all this was going on, the shorter person, who's supposed to be this guy Cedric Barnes—who is listed as a suspect and was apparently

9

questioned about it and has never been arrested for it—is the one that pointed the gun at her and her son." Later in his arguments, he referred again to Barnes, saying Barnes "apparently, for all purposes now, is in El Paso someplace." The State's rebuttal addressed the fact that Gamino and Llanas said two men had robbed them, saying, "[W]hat about Cedric Barnes? What's going to happen to him? . . . You may not know what happens to him. Everybody gets their day in court. Today is Sammie Lee Ford, Jr.'s day in court, and that's what you're here to decide." The State's reference to Barnes was in answer to Ford's argument and was not erroneous. *See id.*

In his thirteenth point, Ford argues that the State improperly seized Ford's property through a forfeiture proceeding, that it did not prove the property was derived from illegal activities, and that Ford was not granted a civil trial as he requested. A forfeiture is a civil proceeding distinct from a criminal prosecution. *See Gambling Paraphernalia, Devices, Equip., & Proceeds v. State*, 22 S.W.3d 625, 627 (Tex. App.—Dallas 2000, no pet.); *see also Beasley v. State*, 5 S.W.3d 812, 814 (Tex. App.—San Antonio 1999, pet. ref'd) (forfeiture filed separate from criminal proceeding). Whether the forfeiture proceeding was proper is not before us in this cause.

Finally, in his last two points of error, Ford complains that he received ineffective assistance of counsel at trial and on appeal. He argues trial counsel should have moved for a directed verdict because the evidence was legally insufficient and that counsel did not object to the State's calling only two witnesses at the suppression hearing, did not investigate other potential witnesses, did not object to the consolidation of the two prosecutions, did not properly argue Ford's motion to suppress or attack the warrantless arrest, and numerous other complaints similar to those raised in his pro se brief. We have considered Ford's pro se complaints and have explained why they lack merit. We have also reviewed the trial court record and hold that Ford received effective assistance

10

throughout his trial. Similarly, because we agree with appellate counsel that there are no grounds for reversal, counsel did not provide ineffective assistance to Ford on appeal.

## Conclusion

We have considered the record, Ford's pro se complaints, and the brief filed by Ford's attorney and agree that the appeal is frivolous and without merit.[6] Accordingly, we grant Ford's attorney's motion to withdraw and affirm Ford's convictions.[7]

_____

David Puryear,  Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   April 21, 2011

Do Not Publish

_____

[6] Because the brief presents a professional evaluation of the record and demonstrates that there are no arguable grounds to be advanced, the brief meets the requirements articulated in *Anders v. California*, 386 U.S. 738, 743-44 (1967). *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *High v. State*, 573 S.W.2d 807, 811-13 (Tex. Crim. App. 1978).

[7] No substitute counsel will be appointed. Should Ford wish to seek further review of his case by the court of criminal appeals, he must either retain an attorney to file a petition for discretionary review or file a pro se petition for discretionary review. *See generally* Tex. R. App. P. 68-79 (governing proceedings in Texas Court of Criminal Appeals). Any petition for discretionary review must be filed within thirty days from the date of either this opinion or the date this Court overrules the last timely motion for rehearing filed. *See id.* R. 68.2. The petition must be filed with this Court, after which it will be forwarded to the court of criminal appeals along with the rest of the filings in this case. *See id.* R. 68.3, 68.7. Any petition for discretionary review should comply with rules 68.4 and 68.5 of the rules of appellate procedure. *See id.* R. 68.4, 68.5.

11