**Marcos TURRUBIATE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04-10-00744-CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 15, 2012.

Discretionary Review Granted
June 6, 2012.

From the County Court at Law No. 8, Bexar County, Texas, Trial Court No. 317830; George H. Godwin, Judge Presiding.[1]

Victor M. Valdes, Attorney at Law, San Antonio, TX, for Appellant.

Kevin P. Yeary, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

In an opinion and judgment dated November 9, 2011, we reversed the trial court's order on appellant's motion to suppress and remanded the cause to the trial court for further proceedings. The State of Texas filed a motion for rehearing and appellant filed a response. We deny the State's motion; however, for the purpose of expanding upon our discussion of waiver, we withdraw our opinion and judgment of November 9, 2011, and issue this opinion and judgment in its place. Appellant was charged by information with possession of marijuana in an amount more than two ounces and less than four ounces. Before trial, appellant moved to suppress the marijuana, arguing it was the fruit of an illegal warrantless search. The trial court conducted a hearing on the motion, and at the conclusion of the hearing, the trial

judge stated she would take the motion to suppress under consideration and make a ruling by the end of June 2010. However, the record before this court does not contain evidence of an express ruling on the motion to suppress. Appellant's case went to trial, and the trial court admitted the confiscated marijuana as State's Exhibit Number 2.

A jury convicted appellant, Marcos Turrubiate, of possession of marijuana in an amount more than two ounces and less than four ounces. The trial court sentenced appellant to one year of adult probation and assessed a $400 fine plus costs of prosecution in the amount of $1502.83. On appeal, appellant argues the trial court erred by denying a pretrial motion to suppress. We agree, and we reverse and remand.

## WAIVER

■ On appeal and on rehearing, the State contends that because the record before this court does not contain the trial court's ruling on the motion to suppress, appellant waived his argument by failing to preserve it for appellate review and this court may not find an implied ruling. In his response to the State's motion for rehearing, appellant noted that, nine days after the suppression hearing, the trial judge sent a letter to the parties stating she was denying the motion to suppress.

At the end of the May 6, 2010 suppression hearing, the trial court stated it would take the matter under advisement and informed the parties "I will send you a letter. In the meantime, Mr. Valdes [defense counsel], we will set this matter for trial at the end of June, and I will make a ruling between now and then." The docket entry

---

1. The Honorable Liza Rodriguez is the presiding judge of County Court at Law No. 8. However, the Honorable Karen Crouch presided over the pretrial motion to suppress hearing, and the Honorable George H. Godwin, visiting judge, presided over the guilt/innocence phase of the trial and signed the final judgment.

for June 14, 2010 reads: "Deny MTS KAC—letters mailed by TISH." The letter, dated June 15, 2010, states: "Please be advised that I am denying the Motion to Suppress that was heard on May 6, 2010, in reference to the above numbered and styled cause." The letter is addressed to both defense counsel and the Assistant Criminal District Attorney. We conclude appellant's challenge to the denial of his motion to suppress is preserved for our review.

## MOTION TO SUPPRESS

In his first issue, appellant argues the trial court erred by denying his motion to suppress.

### A. Standard of Review

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex.Crim.App.2010). First, we apply an abuse of discretion standard to the trial court's findings of fact. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). When the trial court does not issue findings of fact, as in this case, we imply findings that support the trial court's ruling if the evidence (viewed in the light most favorable to the ruling) supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex.Crim. App.2006). We afford almost total deference to the trial court's implied findings, especially those based on an evaluation of the witnesses' credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. Second, we review de novo the trial court's application of the law to the facts, and we will affirm the ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48.

### B. Law Applicable to Warrantless Searches

 A warrantless search of a residence is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim.App.2007). When a defendant attempts to suppress evidence based on a warrantless search or seizure, the State has the burden of showing both: (1) probable cause existed at the time the search was made, *and* (2) exigent circumstances requiring immediate entry made obtaining a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). Probable cause to search exists where "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Id.* If probable cause exists, exigent circumstances may require immediate, warrantless entry by police officers who are: "(1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; [or] (3) preventing the destruction of evidence or contraband." *Gutierrez*, 221 S.W.3d at 685.

 When the police cite possible destruction of evidence as an exigent circumstance, the State must demonstrate the police "could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant." *McNairy*, 835 S.W.2d at 107. Courts should consider five circumstances that are relevant to a reasonable determination that evidence might be destroyed or removed: [2]

---

**2.** We disagree with the dissent's conclusion that the first and third factors no longer apply

after the U.S. Supreme Court's decision in *Kentucky v. King*, —— U.S. ——, 131 S.Ct.

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Id.* (quoting *United States v. Rubin,* 474 F.2d 262, 268 (3d Cir.1973)).

 Even when police do not conduct a lawful search, voluntary consent to search given after an illegal entry may still render the seized evidence admissible. *Reasor v. State,* 12 S.W.3d 813, 817 (Tex. Crim.App.2000). But consent to search given after an illegal entry is not voluntary unless the State can "prove by clear and convincing evidence that the taint inherent in the illegality had dissipated by the time consent is given." *Stone v. State,* 279 S.W.3d 688, 693 (Tex.App.-Amarillo 2006, pet. ref'd). We evaluate whether the taint of an illegal entry has dissipated using the six *Brick v. State* factors:

(1) the proximity of the consent to the [illegal entry;] (2) whether the [illegal entry] brought about police observation of the particular object which they sought consent to search[;] (3) whether the illegal [entry] was 'flagrant police misconduct'[;] (4) whether the consent was volunteered rather than requested by the detaining officers[;] (5) whether

the [resident] was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of the ... residence[;] and (6) whether the police purpose underlying the illegality was to obtain the consent.

*Brick v. State,* 738 S.W.2d 676, 680–81 (Tex.Crim.App.1987); *accord Leal v. State,* 773 S.W.2d 296, 297 (Tex.Crim.App.1989) (requiring analysis of the *Brick* factors to determine "whether the taint stemming from the unlawful entry was sufficiently attenuated" to render consent voluntary).

## C. Analysis

 In order to determine whether the State met its burden of demonstrating both probable cause and exigent circumstances, or, alternatively, voluntary consent, we ordinarily are restricted to a review of the record as it existed at the time of the suppression hearing. *O'Hara v. State,* 27 S.W.3d 548, 551 (Tex.Crim.App. 2000) (stating evidence heard at trial but not at suppression hearing is not relevant). However, the general rule is inapplicable where the State raises the suppression issues at trial "either without objection or with subsequent participation in the inquiry by the defense." *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.1996). In such a case, we may consider the relevant trial testimony. *Id.* Here, the State argues the suppression issues were re-litigated at trial without defense objection. Regardless, whether we consider the record only as it existed at the suppression hearing or in its entirety, we conclude the State failed to meet its burden of demonstrating a lawful warrantless search.

In this case, the record as it existed at the time of the suppression hearing is

---

1849, 179 L.Ed.2d 865 (2011). The dissent's interpretation and application of *King* swallows whole the exigent circumstances exception. Under the dissent's view, probable cause to believe drugs are inside a home—

without more—allows a warrantless search of the home because, following the dissent's reasoning, anyone present inside the home will assume the police are "on their trail" and try to destroy evidence of the drugs.

particularly scant. In fact, the record before this court indicates that all the trial court had before it at the time of the hearing was appellant's motion to suppress, appellant's testimony, and the arresting officer's police report. Appellant testified that on February 11, 2010, Christopher Lopez,, an investigator for Child Protective Services, knocked on appellant's front door while Deputy Santos Chavarria, a sheriff's officer with the Bexar County Sheriff's Office, "hid[ ] from out of sight ... of the peephole." Appellant testified that when he "barely cracked open the door[ ]," Deputy Chavarria "pushed his way in with his hand, pointing his taser gun in my face, saying to turn around and put my hands behind my back. . . . And he put me in handcuffs and sat me down." At that point, appellant testified he gave Deputy Chavarria consent to search in a blue backpack nearby.[3] Deputy Chavarria found a bag of marijuana inside the backpack and placed appellant under arrest.

The State, which had the burden of proving a lawful entry and search, did not call Deputy Chavarria to testify during the hearing, but rather produced only his report, which contained the following handwritten statement:

I was dispatched as a civil standby to contact [Lopez] for possible narcotics use at listed location. Upon arrival, [Lopez] stated [he] had just previously knocked on door of listed apartment to conduct a [Child Protective Services] investigation of [appellant's girlfriend] who resides at listed apartment. [Lopez] smelled a strong odor of marijuana and contacted [Bexar County Sheriff's Office] upon speaking with a Hispanic male who opened the door. I followed [Lopez] who knocked on door of listed

location. [Appellant] who answered and opened the apartment door, was contacted after I smelled a strong fresh odor of marijuana. [Appellant] was sitting on the couch in the living room and began to cry when I asked if marijuana was in the apartment. [Appellant] pointed to a blue backpack next to [appellant] who signed a consent to search of premises. [Appellant] then opened the backpack and removed [the marijuana] from an unsecured brown box witnessed by [Lopez]. [Appellant] was crying stating [appellant] is father of [appellant's girlfriend]'s baby and doesn't want [appellant's girlfriend] to be charged with any crime. [Appellant] stated repeatedly [the marijuana] belonged to [appellant] and was for personal use only. I recovered [the marijuana], took [appellant] into custody and [appellant's girlfriend] arrived shortly prior to my departure. I transported [appellant] to 401 S. Frio for booking process. [Appellant] stated [he] has been staying with [his girlfriend] for about three months but temporarily. [Appellant's girlfriend] was interviewed by [Lopez] who has issued case number. [The marijuana] was placed into evidence at 200 N. Comal Property Room.

At trial, the State presented a more complete portrait of the events with both Deputy Chavarria's and Lopez's testimony. Lopez testified he went to the apartment where appellant, his girlfriend, and their six-month-old child were living in order to investigate a report that marijuana was being used inside the home. When Lopez arrived at the apartment and knocked on the door, appellant partially opened the door and poked his head out to answer. Lopez identified himself and stated he was

**3.** Later at trial, Deputy Chavarria testified appellant was no longer in handcuffs when he gave consent to search the blue backpack.

there to speak with appellant's girlfriend. Appellant told him his girlfriend was not home and would be back later in the afternoon. Lopez asked if the child was in the apartment, and appellant told him no, the child was with his girlfriend.

Lopez testified he left and immediately called his supervisor to report that he had detected a "very, very strong smell of marijuana" coming from the apartment. Lopez then called the Bexar County Sheriff's Department to request that a sheriff's officer accompany him back to the apartment in order to verify whether the child was present. Deputy Chavarria escorted Lopez back to the apartment about an hour later. Lopez knocked on the door while Deputy Chavarria stood out of view of the door's peephole. When appellant cracked the door open and poked his head out, both Lopez and Deputy Chavarria smelled a "strong" odor of marijuana. Deputy Chavarria testified: "[Appellant] opened the door, and I put my arm on the door to keep him from closing it, and I walked in and placed [appellant] on the ground and handcuffed him." Deputy Chavarria also testified he removed and displayed his taser gun while entering the apartment "because at that point, I wanted compliance." When asked why he put his arm on the door, Deputy Chavarria explained: "At that point, it was an issue of destruction of evidence. If there is evidence, if there is marijuana in the house, I have to prevent it from being destroyed and I have to secure it, I guess for the actual offense and the arrest, and the judicial procedure."

Deputy Chavarria testified that Lopez then entered the apartment while Deputy Chavarria searched appellant and the immediate surrounding area for weapons. Once Deputy Chavarria determined appellant was unarmed and did not have access to weapons within arm's reach, he sat appellant on the couch and removed the handcuffs. Deputy Chavarria asked appellant if there was marijuana in the home, and appellant said there was marijuana present and it belonged to him. Appellant began crying. Deputy Chavarria asked appellant where the marijuana was in the apartment, and appellant indicated a blue backpack within his reach. Deputy Chavarria asked appellant to sign a consent to search form, and appellant signed it. On Deputy Chavarria's request, appellant opened the backpack, removed a brown box, and opened it, revealing a plastic bag containing marijuana. Deputy Chavarria placed appellant under arrest. Appellant's child was not present at the apartment.

Both Deputy Chavarria's testimony and his report reflect that he was dispatched to appellant's residence to investigate "possible narcotics use" and he smelled "a strong fresh odor of marijuana" when appellant answered the door. We will assume there was probable cause for a search warrant based on Lopez's report of a "very, very strong smell of marijuana" coming from the apartment. However, the record does not support the existence of exigent circumstances requiring immediate entry into the apartment without first obtaining a warrant. Deputy Chavarria testified that he acted to prevent the destruction of marijuana inside the apartment, but nothing in the record suggests that destruction of evidence was a risk under the circumstances. Appellant willingly answered the door both times Lopez knocked and did not make any movement as if he were about to destroy evidence, such as by darting away from the door or attempting to close it after seeing who was knocking. In fact, because Deputy Chavarria stood out of sight of the peephole when Lopez knocked the second time, there is nothing to suggest appellant was even aware of any police involvement when he opened

the door.[4] Deputy Chavarria did not testify that he observed anything to suggest imminent destruction or removal of evidence; rather, he forced his way into the apartment immediately after appellant voluntarily opened the door. Accordingly, the State did not meet its burden of demonstrating that both probable cause and exigent circumstances justified Deputy Chavarria's warrantless entry into appellant's residence.

 As to whether appellant gave voluntary consent to search, the State again failed to meet its burden. Neither Deputy Chavarria's testimony nor his report contains clear and convincing evidence that the taint of any illegality had dissipated by the time appellant gave consent to search. It is unclear from the record how much time elapsed between the entry and the consent. Deputy Chavarria testified that when appellant gave consent to search he was no longer in handcuffs but was "not free to leave" because he was detained, and Deputy Chavarria had removed his taser gun and was holding it in his hand at the time. Deputy Chavarria also testified he did not give appellant *Miranda* warnings, and it is unclear whether appellant was made fully aware that he could decline to consent to search. Based on these facts, the State failed to demonstrate that the taint of any illegality in Deputy Chavarria's entry into the apartment had dissipated by the time appellant gave consent to search.

## CONCLUSION

For the reasons stated above, we conclude the State did not meet its burden of proof by demonstrating that both probable cause and exigent circumstances justified the warrantless entry, or that the taint of any illegal entry had dissipated by the time appellant gave consent to search. Accordingly, we reverse the trial court's order on the motion to suppress and remand this case to the trial court for further proceedings consistent with this opinion.[5]

STEVEN C. HILBIG, Justice, dissenting opinion.

The majority has withdrawn its original opinion and judgment dated November 9, 2011 and issued a new opinion. By way of its new opinion, the majority denies the State's motion for rehearing. I respectfully dissent from the denial of the motion for rehearing and to the majority's opinion and judgment. I believe the constitutional requirements of probable cause and exigent circumstances were satisfied when Deputy Chavarria entered the premises, and the evidence supports the trial court's implied finding that Turrubiate voluntarily gave the marijuana to the deputy. Accordingly, the judgment of the trial court should be affirmed.

### BACKGROUND

As set forth in the majority opinion, the central controversy in this case involves the actions of Deputy Chavarria and how he gained access to Turrubiate's residence. Because Deputy Chavarria entered the residence without a warrant, his entry is presumptively unreasonable under the Fourth Amendment. *See Michigan v.*

---

4. Even if appellant knew Deputy Chavarria was on the other side of the door, we disagree with the dissent's conclusion that appellant was aware the police were "on his trail" when he opened the door. Appellant could have assumed Lopez and the deputy were at the door for the purpose of investigating appellant's girlfriend, which was the purpose of Lopez's initial visit to the residence.

5. We do not address appellant's second issue because it is not necessary for resolution of this appeal. *See* Tex.R.App.P. 47.1.

*Fisher,* —— U.S. ——, ——, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009); *Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex.Crim.App. 2007). However, entry based on probable cause coupled with exigent circumstances does not violate the Fourth Amendment. *Estrada v. State,* 154 S.W.3d 604, 609 (Tex. Crim.App.2005).

No findings of fact were filed by the trial court. We will imply findings of fact to support the trial court's decision as long as the implied findings are supported by the record. *Hereford v. State,* 339 S.W.3d 111, 118 (Tex.Crim.App.2011).

## PROBABLE CAUSE

Because the majority concludes no exigent circumstances existed, it simply assumed without deciding Deputy Chavarria had probable cause when he entered the residence. Because I believe exigent circumstances existed, I will address the issue of probable cause.

Child Protective Services investigator Christopher Lopez testified he went to the Turrubiate residence to investigate a complaint that marijuana was being used in the presence of a six-month old baby. Lopez knocked on the door and Turrubiate answered. Although Turrubiate did not fully open the door, Lopez noticed a "very, very strong smell of marijuana coming from the home." When Turrubiate denied either the child or its mother was present in the home, Lopez left. He called his supervisor and reported the strong odor of marijuana. His supervisor instructed Lopez to call the sheriff's office and obtain its help to determine whether the child was present in the home. Lopez testified that he returned approximately one hour later accompanied by Deputy Chavarria. He knocked on the door again and noticed "a very strong smell of marijuana" coming from the residence when Turrubiate opened the door. Deputy Chavarria testi-

fied that as soon as Turrubiate opened the door, he also noted a "very strong, fresh odor of marijuana" but not from marijuana smoke. In his report, Deputy Chavarria described the odor as a "strong fresh odor of marijuana." Upon detecting the odor of marijuana, Deputy Chavarria pushed his way into the residence with this Taser drawn, handcuffed Turrubiate, and conducted a quick protective sweep of the premises. After performing the protective sweep, the deputy removed the handcuffs and began to question Turrubiate.

Turrubiate argues that smell alone does not provide probable cause. He relies on the statement in *State v. Steelman,* 93 S.W.3d 102, 108 (Tex.Crim.App.2002), that "[t]he odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home." However, the court later explained this statement in *Estrada:*

> There is, however, a distinction between what is necessary to establish probable cause, and what is required for an officer to conduct a warrantless search of an individual's residence. In *Steelman,* we held that the odor of marijuana alone is not enough to allow officers to conduct a warrantless search. This is because it is clear under both United States constitutional law and Texas constitutional law that a warrantless search of a residence is illegal unless probable cause exists in combination with exigent circumstances.

154 S.W.3d at 608. The court went on to state that the odor of marijuana was an element in determining whether probable cause existed. *Id.* at 609. It also noted that "[o]ur holding in *Steelman* does not support the proposition that marijuana odors alone cannot constitute probable cause for a warrantless search." *Id.* at 608.

Many courts have held that the smell of marijuana constitutes probable cause in cases involving search of automobiles. *See U.S. v. McSween*, 53 F.3d 684, 686 (5th Cir.), *cert. denied*, 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995) ("the smell of marihuana alone may be ground enough for a finding of probable cause"); *U.S. v. Marshall*, 878 F.2d 161, 163 (5th Cir.1989) ("once the officer detected the odor of marijuana, probable cause existed"); *Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim. App.1979) (holding smell of marijuana provided probable cause for search of vehicle); *Dickey v. State*, 96 S.W.3d 610, 613 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (same); *See also Joseph v. State*, 3 S.W.3d 627, 634–35 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (smell of marijuana establishes probable cause for search and may establish probable cause for arrest). Because the probable cause standard should be the same whether we consider a search of a residence or of a vehicle, I would hold probable cause existed in this case.[1]

### EXIGENT CIRCUMSTANCES

As discussed above, exigent circumstances must accompany probable cause in order for a warrantless search of a residence to be reasonable under the Fourth Amendment. One circumstance recognized as exigent is the entry into a location to prevent the imminent destruction of evidence. *Kentucky v. King*, —— U.S. ——, ——–——, 131 S.Ct. 1849, 1853–54, 179 L.Ed.2d 865 (2011); *Estrada*, 154 S.W.3d at 610. The majority relies on the test adopted by the Court of Criminal Appeals in *McNairy v. State* to determine whether law enforcement officers had a reasonable belief that evidence "might be

destroyed or removed *before they could obtain a warrant.*"

Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

835 S.W.2d 101, 107 (Tex.Crim.App.1991) (quoting *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir.1973)) (emphasis added). However, I believe this test has been significantly altered by the Supreme Court's holding in *King*.

In *King*, the United States Supreme Court considered whether the exigent circumstances exception to the warrant requirement applies when the fear of destruction of evidence was prompted by the conduct of the police. 131 S.Ct. at 1854. The facts in *King* are fairly straight-forward. The police conducted a controlled buy of cocaine and sought to intercept the seller before he entered an apartment. *Id.* Uniformed officers followed the suspect into a breezeway in the apartment complex. There were two apartments on opposite sides of the breezeway and the police were not sure which apartment the suspect entered. *Id.* Police approached

---

1. I note the initial impetus for Lopez to approach the residence was a report of marijuana use by the occupants of the residence. Nothing in the record identifies the source of

this information. Although we decide probable cause by examining the "totality of the circumstances," this information adds little to the probable cause determination.

one door because they smelled marijuana coming from the apartment. They pounded on the door and announced their presence in a loud voice, stating "This is the police" or "Police, police, police." *Id.* Hearing movement from within the apartment and believing drug-related evidence was about to be destroyed, the police kicked in the door, found three people in the apartment, conducted a protective sweep for further suspects, and found marijuana and powder cocaine in plain view.[2] *Id.* The Kentucky Supreme Court held that exigent circumstances did not support the warrantless entry because "it was reasonably foreseeable that the occupants would destroy evidence when police knocked on the door and announced their presence" and thus the police impermissibly created the exigency. *Id.*

The United States Supreme Court granted certiorari. The Court recognized that lower courts had developed the "police-created exigency" exception to the exigent circumstances rule and discussed various tests devised by the courts to determine if the exception applies. *Id.* at 1857, 1858–61. The Supreme Court ultimately concluded the only relevant factor to consider is whether police gained entry into the premises "by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 1862. However, it is instructive to review the factors or tests the court rejected. These include whether the police acted in bad faith to avoid the warrant requirement, whether it was reasonably foreseeable that drug suspects would attempt to destroy evidence be-

cause police chose to knock on the door and announce their presence, whether the tactics employed by the police were contrary to good or standard law enforcement practices, and germane to this case, whether police, having probable cause, had ample time to obtain a warrant before knocking on the door. *Id.* at 1859–61. The court noted that some courts "fault law enforcement officers if, after acquiring evidence that is sufficient to establish probable cause to search particular premises, the officers do not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search." *Id.* at 1860. The court held "[t]his approach unjustifiably interferes with legitimate law enforcement strategies." *Id.*

In light of the Supreme Court's reasoning, I believe two of the *McNairy* factors for determining the existence of exigent circumstances—the degree of urgency involved and the amount of time necessary to obtain a warrant, and the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought—are not constitutionally required or applicable. These factors involve weighing the risks of destruction of the evidence and safety to the police versus the amount of time it takes to get a warrant. The court's analysis in *King* obviates the need to consider these factors because the court held that law enforcement is not required to obtain a warrant as soon as probable cause exists and is not prohibited from knocking on a door once there is probable cause.[3] Thus, in deter-

---

**2.** The police apparently chose the wrong apartment. They later entered the second apartment and located the original suspect. 131 S.Ct. at 1855.

**3.** The majority misunderstands my arguments about the Supreme Court's holding in *King* as indicated by the comments in footnote 2. *King*

did not alter the requirement of probable cause and exigent circumstances before entry without a warrant. Contrary to the majority's assertion, my interpretation and application of *King* does not "swallow whole" the exigent circumstances exception. It is easy to imagine circumstances where a reliable informant provides probable cause to search a resi-

mining whether exigent circumstances existed, we are left with (1) reasonable belief that the contraband is about to be removed; (2) information indicating the possessors of the contraband are aware that the police are on their trail; and (3) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *See McNairy*, 835 S.W.2d at 107.

I believe factors (1) and (3) are essentially the same. Whether the contraband is "removed" by destruction or removed to another location, the essential issue is whether police must act quickly to secure the contraband. And in this age, a court could take judicial notice that efforts to dispose of narcotics to escape discovery is characteristic behavior of persons engaged in the narcotics traffic. *See* TEX.R. EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... generally known within the territorial jurisdiction of the trial court"); *King*, 131 S.Ct. at 1857 ("[d]estruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain," and in most cases, "the reason for the destruction is fear that the evidence will fall into the hands of law enforcement"). The key issue is whether those possessing the contraband are aware that police are on their trail. If so, given the general knowledge that those engaged in the trafficking of narcotics are likely to take efforts to dispose of the drugs, it would be reasonable to form a belief that the contraband will be removed or destroyed without immediate intervention by the police.

Here, Deputy Chavarria testified to this very concern, stating that he entered the premises to prevent the marijuana from being destroyed and to secure it for "the judicial procedure." He testified he entered the residence to conduct further investigation and did not have the intent to arrest anyone. He stated he did not leave to secure a warrant because the evidence would have been destroyed. This record supports the trial court's implied finding that exigent circumstances existed because the deputy reasonably feared the destruction of contraband or evidence. Because both Deputy Chavarria and Lopez testified to the strong smell of marijuana, it was reasonable for the trial court to infer that Turrubiate was aware of the smell. And it was reasonable for the court to conclude Turrubiate was aware the police were "on his trail" when he opened the door. Given the strong odor of marijuana, the trial judge could infer that Turrubiate assumed the police noticed the smell. When asked whether the deputy would have been within Turrubiate's view as he opened the door, Lopez responded "I believe so. I mean, he was standing right next to me." [4]

dence, the police knock on the door and the occupant opens the door. He does not react to the presence of the police and evidence of the contraband is not apparent. Because there is nothing to indicate the occupant is aware of the police's *knowledge* that he possesses contraband, the police could not form a reasonable belief that the contraband is about to be destroyed or removed. Entry into the premises would not be supported by exigent circumstances.

4. In footnote 4, the majority attacks my conclusion that Turrubiate was aware that police were "on his trail." Simply put, given the strong odor of marijuana, it was reasonable for the trial court to conclude that Turrubiate assumed the deputy noticed the smell and the deputy knew it came from his residence. Contrary to the majority's argument, it would not matter if Turrubiate thought the purpose of the deputy's visit was to investigate his girlfriend. Rather, the important inquiry is whether Deputy Chavarria could form a rea-

The majority concludes these facts do not create exigent circumstances. Instead, the majority points out Turrubiate willingly opened the door both times and did not make any furtive movements indicating he was about to destroy any evidence. Although furtive conduct is a factor to consider in deciding whether exigent circumstances exist, I do not believe the lack of furtive movements or audible indications of imminent destruction of evidence is dispositive. The question to be answered in this case is whether there is sufficient evidence in the record to support the trial court's implied finding that Deputy Chavarria formed a reasonable belief that evidence or contraband would be removed or destroyed and entry into the premises was immediately necessary to prevent that removal or destruction. And, as discussed above, the question should be answered in the affirmative because it was reasonable to conclude Turrubiate knew of the deputy's presence when Turrubiate opened the door,[5] and the odor of marijuana was apparent to all. *See Stone v. State*, 279 S.W.3d 688, 692 (Tex.App.-Amarillo 2006, pet. ref'd) ("apartment occupants must have been aware of the officers' presence before it can be said that knowledge of the officers' presence somehow influenced the occupants' actions"). As the Court of Criminal Appeals has observed:

> Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door. Further, nothing in the statutes or governing constitutional provisions requires any citizen to respond to a knock on his door by opening it. Indeed, the very act of opening the door exhibits an intentional relinquishment of any subjective expectation of privacy, particularly when illegal activity may be readily detected by smell and sight by anyone standing at the doorway.

*Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex.Crim.App.1983) (footnotes omitted).

Having concluded both probable cause and exigent circumstances existed when Deputy Chavarria entered the apartment, was the seizure of the marijuana lawful? Yes. Deputy Chavarria testified that he removed the handcuffs from Turrubiate after he conducted a protective sweep and ascertained no weapons were within reach. Deputy Chavarria stated he began his investigation into the smell of marijuana by asking Turrubiate if there was marijuana present. Turrubiate began to cry, admitted he had marijuana, and stated he would sign a consent to search form. Deputy Chavarria next asked Turrubiate where the marijuana was located, and Turrubiate stated it was in a blue backpack next to where he was seated. Turrubiate signed the consent form, and at the deputy's request, retrieved the marijuana from the backpack. During his testimony at the hearing on the motion to suppress, Turrubiate admitted he gave consent to Deputy Chavarria to retrieve the marijuana. The State met its burden to prove by clear and convincing evidence that Turrubiate consented to the search. *See State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App.1997).

In sum, the record supports the trial court's implied findings, which in turn support the conclusions that Deputy Chavar-

---

sonable belief that Turrubiate would take action to destroy evidence or contraband because of the deputy's presence.

**5.** Turrubiate testified during the motion to suppress that he looked out the peephole of the front door and did not see the deputy, contending the deputy was hiding out of sight. Based on the trial court's ruling, we infer the court did not credit this testimony.

794

ria's entry was supported by probable cause and exigent circumstances and the seizure of the marijuana did not violate the Fourth Amendment.

I realize this result might be seen by some as authorizing a general search based only on the smell of marijuana. But my conclusion is based on the unique facts of this case and existing precedents that lead to this logical result. Even when probable cause and exigent circumstances are present, any search is limited to the exigency. *See Gutierrez*, 221 S.W.3d at 686–87 (holding that "full-blown" search of house not authorized by exigency created when police observed drugs while retrieving stolen laptop from defendant's home, noting that the exigent circumstances exception to the warrant requirement "does not grant the police the unfettered discretion to take any course of action, however disproportionate it may be to the perceived exigency"). Here, Deputy Chavarria did not conduct a "full-blown" search of Turrubiate's residence. His reaction to the perceived exigency was to ensure his safety by initially restraining Turrubiate and conducting the protective sweep, then removing the handcuffs and investigating the smell by asking Turrubiate if marijuana was present. Turrubiate voluntarily answered the question and consented to the search that resulted in the seizure of the marijuana. Under these facts, we need not discuss or explore the limits the Fourth Amendment would place upon any search conducted after entry into the home.

### CONFRONTATION CLAUSE

In his second point of error, Turrubiate contends the trial court violated his right of confrontation during the hearing on the motion to suppress by admitting Deputy Chavarria's police report into evidence, when the deputy was not present to testify. I would overrule this point and hold the report was admissible at the pretrial suppression hearing. *See Ford v. State*, 305 S.W.3d 530, 535–541 (Tex.Crim.App. 2009); *Graves v. State*, 307 S.W.3d 483, 489 (Tex.App.-Texarkana 2010, pet. ref'd); *Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex. App.-Dallas 2005, pet. ref'd).

For these reasons, I would affirm the trial court's judgment.

