

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-10-00744-CR

Marcos **TURRUBIATE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 317830
Honorable George H. Godwin, Judge Presiding[1]

Opinion by: Sandee Bryan Marion, Justice

Sitting: Karen Angelini, Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: September 25, 2013

REVERSED AND REMANDED

This appeal is on remand from the Texas Court of Criminal Appeals. Marcos Turrubiate, appellant, is appealing his conviction of possession of marijuana. In an opinion dated February 15, 2012, this court reversed appellant's conviction after concluding the trial court erred in denying appellant's pretrial motion to suppress. *See Turrubiate v. State*, 365 S.W.3d 780 (Tex. App.—San Antonio 2012), *rev'd & remanded*, 399 S.W.3d 147 (Tex. Crim. App. 2013). Specifically, this court held "the State did not meet its burden of demonstrating that both probable cause and exigent

---

[1] Sitting by assignment.

circumstances [to prevent the destruction of evidence or contraband] justified Deputy Chavarria's warrantless entry into appellant's residence." 365 S.W.3d at 788.

On the State's appeal to the Court of Criminal Appeals, the Court agreed "with the holding [of this court] that probable cause to believe that illegal drugs are in a home coupled with an odor of marijuana from the home and a police officer making his presence known to the occupants do not justify a warrantless entry." 399 S.W.3d at 149, 154 (agreeing "with [this court] that nothing in the record suggests that destruction of evidence was imminent under the circumstance"). However, the Court remanded the cause to this court to decide (1) whether the State made the argument at trial that exigent circumstances existed regarding the imminent risk of harm to a child allegedly inside the home and (2), if not, whether we may nonetheless address that argument on appeal as an alternative basis to uphold the trial court's denial of the motion to suppress.

## BACKGROUND

An investigator with the Texas Department of Family and Protective Services, Christopher Lopez, went to appellant's residence to investigate a report that marijuana was being used in the home that appellant shared with his girlfriend and their six-month-old child. Lopez knocked on the door and appellant answered, cracking the door open slightly and sticking out his head. Lopez testified he noticed a strong odor of marijuana emanating from the crack in the door. Lopez asked appellant if his girlfriend was at home, and appellant replied that neither the girlfriend nor the child were home. Lopez gave appellant his card and asked him to tell his girlfriend to contact him when she returned.

After Lopez left the residence, he called his supervisor to report that he had smelled a "very, very strong smell of marijuana" coming from appellant's home and he did not know if the child was in the residence or not. The supervisor advised Lopez to call the Bexar County Sheriff's office to send an officer out "because there's the matter of the child's safety, so we needed to verify if

the child was in the residence or not." Lopez called the sheriff's department and Officer Chavarria met Lopez about an hour after Lopez's first encounter with appellant. Lopez and Officer Chavarria went to appellant's door together and Lopez knocked on appellant's door for the second time. Appellant once again cracked open the door and, again, a strong odor of marijuana came out of the house. At that time, Officer Chavarria testified he "put [his] arm on the door to keep [appellant] from closing it, and [he] walked in and placed [appellant] on the ground and handcuffed him." After conducting a search for weapons, Officer Chavarria testified he removed the handcuffs and asked appellant whether there was marijuana in the home. Appellant told him there was marijuana present and it was in a backpack and it belonged to him. Officer Chavarria asked appellant to sign a consent to search form, and appellant signed it. Officer Chavarria then asked appellant to open the backpack. Appellant complied and he removed a brown box with a plastic bag containing marijuana inside. Officer Chavarria placed appellant under arrest and he was charged with possession of marijuana. As appellant had told Lopez previously, the child was not at the residence.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We apply an abuse of discretion standard to the trial court's findings of fact. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). When the trial court does not issue findings of fact, we imply findings that support the trial court's ruling if the evidence supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We afford almost total deference to the trial court's implied findings, especially those based on an evaluation of the witnesses' credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. We review de novo the trial court's application of the law to the

facts, and affirm the ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id*. at 447–48.

The Fourth Amendment proscribes unreasonable searches and seizures. U.S. CONST. amend. IV. A warrantless entry into a residence is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972). When a defendant attempts to suppress evidence based on a warrantless search, the State has the burden to show probable cause existed at the time the search was made, and exigent circumstances requiring immediate entry made obtaining a warrant impracticable. *Gutierrez*, 221 S.W.3d at 685. Probable cause exists where "reasonable trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime . . . or evidence of a crime will be found." *Id*. Exigent circumstances requiring immediate, warrantless entry by a police officer have been found to exist in three categories: (1) when an officer is providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) when an officer is protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) for the prevention of the destruction of evidence or contraband. *Id*. "[T]he determination of whether an officer has probable cause and exigent circumstances to enter a person's home without a warrant is a factual one based on the sum of all the information known to the officer at the time of entry." *Parker v. State*, 206 S.W.3d 593, 600 (Tex. Crim. App. 2006). Generally, in determining whether the State met its burden of demonstrating the existence of probable cause and exigent circumstances, we are restricted to a review of the record as it existed at the time of the suppression hearing. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, as here, when the State raises the suppression

issues at trial "either without objection or with subsequent participation in the inquiry by the defense," we may consider the record in its entirety. *Id.*

## A. Whether the State made the argument at trial that exigent circumstances existed regarding the risk of harm to the child inside the home

A hearing on the motion to suppress was held on May 6, 2010. At the hearing, appellant was the only witness to testify. The State produced no witnesses and the only evidence introduced at the hearing from the State was the police report from the incident. The police report, written by Officer Chavarria, stated the following:

> I was dispatched as a civil standby to contact [Lopez] for possible narcotics use at listed location. Upon arrival, [Lopez] stated [Lopez] had just previously knocked on door of listed apartment to conduct a CPS investigation of [appellant's girlfriend] who resides at listed apartment. [Lopez] smelled a strong odor of marijuana and contacted [Bexar County Sheriff's Office] upon speaking with a Hispanic male who opened the door. I followed [Lopez] who knocked on the door of listed location. [Appellant] who answered and opened the apartment door, was contacted after I smelled a strong fresh odor of marijuana . . . .

Officer Chavarria's report did not mention a child, nor did it indicate any concern for the safety of any child who may or may not have been inside the apartment, but instead states Officer Chavarria went to appellant's home to contact Lopez "for possible narcotics use at listed location." The State did not argue that exigent circumstances regarding the safety of the child existed to support the officer's warrantless entry into appellant's home, but did make the argument that there was the potential for the destruction of evidence. The trial court did not rule on the motion to suppress immediately, but sent a letter to the parties on June 15, 2010, stating the motion that was heard on May 6 was denied.

Thereafter, appellant's case went to trial on October 11, 2010. At trial, the State introduced the testimony of two witnesses—Lopez and Officer Chavarria. The State did not specifically argue that exigent circumstances existed regarding the safety of the child in closing arguments, but argued the following:

The defense attorney talked a lot about probable cause. What he didn't mention was that, to the Fourth Amendment, there is an exception, and it's an exception for warrantless searches. Let's say — I'm going to give you a scenario, okay? An officer goes to a neighbor's house because he gets a report of some screams going on from that house by a nosey next-door neighbor. So he knocks on the door, some guy opens it with his hands and there's blood on the guy's hands. What officer in his right mind is going to say, Excuse me, hold that thought, let me go run and get a warrant so you can hide the body while I go get the warrant? That doesn't happen. There's an exception for exigent circumstances, like in drug cases such as this, in case the defendant, in this case, decided to take the pot and flush it down the toilet. The officer in no way has time to go and get a warrant and then come back because of the destruction of the evidence. And that is the exception that the defense counsel did not tell you about, and that's what I'm explaining to you right now.

The State's arguments at trial about exigent circumstances, like Officer Chavarria's testimony, focused on the destruction of evidence. Also during closing arguments, the State said:

We proved this beyond a reasonable doubt. This is not only an issue about violating the law. This is an issue about child safety. It's scary that there are drugs hidden among toys, that there is [sic] drugs in a backpack when there are kids in the house, or there's a six-month-old baby.

This single reference to "an issue about child safety" was not related to any argument that exigent circumstances existed based on child safety. Instead, this statement was made in the context of the State's argument that it had proved each element of the offense ("how do we prove intentionally or knowingly," possession because "he admitted it was his," "[i]n a usable quantity").

On remand, the Court of Criminal Appeals instructed this court to first decide whether the State made the argument at trial that concern for the safety of the child served as exigent circumstances to justify entry into and the subsequent search of appellant's home. However, we need not reach this issue in light of the Court's more recent opinion in *Alford v. State*, 400 S.W.3d 924 (Tex. Crim. App. 2013), issued after its opinion in *Turrubiate*. The *Alford* Court held that a court of appeals should consider any legal theory upon which the trial court's ruling may be upheld, regardless of whether that argument was made at trial, when, as here, the prevailing party in the underlying motion to suppress asserts that argument on appeal. *Id*. at 929. Accordingly, we will

address the merits of the alternative theory the State asserts on appeal—that exigent circumstances regarding the safety of the child serves as an alternative basis to uphold the trial court's ruling on appellant's motion to suppress.

### B. Whether exigent circumstances regarding the safety of the child serves as an alternative basis to uphold the trial court's denial of the motion to suppress

The CPS caseworker, Lopez, testified that after leaving appellant's home the first time he made a call to his supervisor because "[he] did not know if the child was in the residence or not, and that there was a very, very strong smell of marijuana coming from the home." Lopez then stated:

> My supervisor then advised that I call the Bexar County Sheriff's to go out there, because there's the matter of the child's safety, so we needed to verify if the child was in the residence or not. When I called the Bexar County Sheriff's, they showed up. I knocked on the door again to see if [appellant's girlfriend] had arrived, because it was about an hour later.

Concerning the call Officer Chavarria responded to, Officer Chavarria testified:

> I was dispatched to assist CPS. I met him at the office. He basically described to me that the apartment with which he was going to conduct an investigation smelled like marijuana. So for safety sake and for the sake of security, while CPS conducted the investigation, I escorted the CPS worker to the apartment.

We note Lopez did not state what he told Officer Chavarria and no other evidence was presented about what Lopez told Officer Chavarria regarding Lopez's concern for the child. Also, Officer Chavarria's testimony did not indicate what Lopez communicated to him regarding the child's possible presence in appellant's home or the risk of the child's safety. Instead, Chavarria stated Lopez "basically described to [him] that the apartment with which he was going to conduct an investigation smelled like marijuana."

When Lopez and Officer Chavarria went to appellant's door a second time, appellant, again, cracked open his door. When appellant opened the door, Officer Chavarria testified he smelled a strong odor of marijuana. Officer Chavarria then asserted he went into appellant's home

without leaving to retrieve a warrant because "[a]t that point, it was an issue of destruction of evidence." When asked why he did not get a search warrant, Officer Chavarria again stated: "That would require me to leave, and at that point, that would create a compromise, as far as the evidence is concerned, that would make the evidence available for destruction. I was unable to leave." Officer Chavarria testified to the following:

> Q:  Okay. When you said you made entry into the house, how exactly did you make entry?
>
> A:  I believe, if I remember right, the defendant opened the door, and I put my arm on the door to keep him from closing it, and I walked in and placed the defendant on the ground and handcuffed him.
>
> Q:  And why did you put your hand on the door? Why is that important?
>
> A:  At that point, it was an issue of destruction of evidence. If there is evidence, if there is marijuana in the house, I have to prevent it from being destroyed and I have to secure it, I guess for the actual offense and the arrest, and the judicial procedure.

Officer Chavarria detailed what happened after he went in appellant's home:

> A:  Again, I searched the area for weapons. I wanted the defendant to sit on the couch, so I made sure that, number one, he didn't have a weapon on him; and number two, he didn't have access to weapons within his immediate span of control, within arms-reach type thing. So I sat him on the couch and removed the handcuffs.
>
> Q:  Is that for officer safety?
>
> A:  For my safety and for the CPS worker, yes.
>
> Q:  What happened after you placed the defendant on the couch?
>
> A:  I began conducting an investigation. Because of the smell of marijuana, I asked him if there was marijuana in the house.
>
> Q:  And did he say anything to you?
>
> A:  He said, yes, there is marijuana in the house, and that it was his, and began crying.
>
> Q:  Okay. What happened next?

A:      I asked the defendant if he was willing to sign a consent to search.  I asked him where the marijuana was . . . .

Nowhere in his testimony does Officer Chavarria express a concern for the safety of a child that required his entry into appellant's residence without a warrant.  His actions once inside appellant's home also do not indicate he entered because he reasonably believed there may have been a child inside in need of assistance.  The Court of Criminal Appeals, in *Gutierrez*, explained, "[w]hen confronted with an urgency that requires immediate police action and does not allow for the procurement of a warrant, law enforcement is authorized to take reasonable steps to secure the status quo.  But this exception to the warrant requirement does not grant police the unfettered discretion to take any course of action, however disproportionate it may be to the perceived exigency." *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007) (finding no exigent circumstances when police response went beyond the scope of perceived exigency (i.e. full blown search of appellant's home)); *see also Mincey v. Arizona*, 437 U.S. 385, 393 (1978) ("[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'").  Here, Officer Chavarria did not search for the child, but instead handcuffed appellant and interrogated him, not about the location of the child, but about whether he was in possession of marijuana.

The State's argument that Officer Chavarria objectively believed exigent circumstances existed regarding the safety of the child is unpersuasive; there was no testimony presented about what Lopez communicated to Officer Chavarria regarding a child possibly being inside the apartment.  Officer Chavarria did not testify about his concern for a child or the need to search for a child upon entry into appellant's home, but instead handcuffed appellant and interrogated him about the presence of marijuana.  Further, Officer Chavarria specifically testified that he could not

leave to get a warrant because of the potential for destruction of evidence. He did not testify to anything regarding the child who may or may not have been at risk.

Lopez testified to the following:

Q:     . . . In other words, [Officer Chavarria] went from room to room, because that's what you wanted, the child, no?

A:     Yes, sir.[2]

Q:     So in order for you and the officer to find out if the child was there, you have to go from bedroom to bedroom?

A:     Yes, sir.

Q:     Okay. So that was your main concern?

A:     Yes, sir.

Even if we could infer from Lopez's somewhat ambiguous testimony that either he or the officer went to look for a child once inside the apartment, this does not support any implied finding that exigent circumstances existed *at the time* of the warrantless entry. *See Parker*, 206 S.W.3d at 600 ("[T]he determination of whether an officer has . . . exigent circumstances to enter a person's home without a warrant is a factual one based on the sum of all information known to the officer *at the time of entry*." (emphasis added)). In other words, the fact that the officer may have searched once inside does not retroactively supply the requisite exigent circumstances justifying the warrantless entry to begin with when, as here, there was no evidence presented that Officer Chavarria knew about the possibility of a child inside before making entry.

We may imply findings to support the trial court's ruling when there is evidence presented supporting that finding. *Dixon*, 206 S.W.3d at 590. Here, however, Officer Chavarria's testimony

---

[2] We note it is difficult to determine whether Lopez answered "Yes, sir" to the defense's question about whether Lopez wanted to find the child, or if Lopez's answer was in agreement to the defense's assertion that "[Officer Chavarria] went from room to room."

does not support an implied finding that he believed exigent circumstances existed regarding the safety of the child. *Cf. Estrada v. State*, 154 S.W.3d 604, 610 (Tex. Crim. App. 2005) (finding exigent circumstances existed both for the safety of the police officer and for prevention of the destruction of evidence when the officer testified to his reasons for entering and his testimony supported both circumstances). Officer Chavarria's testimony about entering the apartment without a warrant does not support a concern for the safety of the child, but instead demonstrates his reasons for entering and his actions upon entry were focused on preserving evidence, which we have already concluded, and the Court of Criminal Appeals has agreed, was an insufficient basis to support his warrantless entry. Further, the totality of the circumstances do not reveal any evidence from which it would be reasonable to infer that any exigency existed, requiring a warrantless entry into appellant's home. Based on the foregoing, we conclude the record does not support Officer Chavarria's entry into appellant's home on the basis that the child's safety was at issue and, thus, does not serve as an alternative basis to uphold the trial court's denial of the motion to suppress.

## CONCLUSION

We conclude the State did not meet its burden of proof of establishing that exigent circumstances justified the warrantless entry and subsequent search of appellant's home by Officer Chavarria. We reverse the trial court's order on the motion to suppress and remand this case to the trial court for further proceedings.

Sandee Bryan Marion, Justice

Publish